Kristen G. Simplicio (Bar No. 263291)
Anna C. Haac (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue Northwest,
Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 919-5852
Facsimile: (202) 973-0950
*ksimplicio@tzlegal.com*
*ahaac@tzlegal.com*

Annick M. Persinger (Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
Telephone: (213) 425-3657
*apersinger@tzlegal.com*

*Counsel for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IOLA FAVELL, SUE ZARNOWSKI, and MARIAH CUMMINGS, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA and 2U, INC.,<br><br>Defendant. | Case Nos.  2:23-cv-00846-GW-MAR<br>2:23-cv-003389-GW-MAR<br><br>**JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(f)** |

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.*,
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

Pursuant to Federal Rule of Civil Procedure 26(f), Plaintiffs Iola Favell, Sue Zarnowski, and Mariah Cummings, and Defendants University of Southern California ("USC") and 2U, Inc. ("2U") respectfully submit this Joint Report based on their conference and set forth their respective positions with respect to the issues of discussion required under the Court's May 30, 2023 Order in Case No. 2:23-cv-00846-GW-MAR ("*Favell I*") and June 1, 2023 Order in Case No. 2:23-cv-003389-GW-MAR ("*Favell II*").

Identical Rule 26(f) reports are being filed in both *Favell I and II*, as the two cases differ only in the causes of action, not the factual allegations. As is discussed in the Parties' briefing on the Motion for Remand and Motion to Stay in *Favell II*, there are numerous questions pertaining to status of the claims presented there, which may result in the matter being remanded, stayed, or dismissed.[1] Moreover, Defendants have filed motions to dismiss in *Favell I*.

# I.     Summary of Claims and Defenses

## Plaintiffs' Statement:

*Favell I* and *Favell II* arise from misrepresentations made by Defendants University of Southern California ("USC") and 2U, Inc. ("2U") (collectively "Defendants") for over a decade regarding the USC Rossier School of Education's standing in U.S. News & World Report's ("US News") annual ranking of the United States' Best Education Schools. Defendants have acknowledged the importance of US News rankings to students' selection of schools, and to the success of online degree programs like USC Rossier's. Beginning in 2008, to promote increased enrollment in Defendants' online degree programs, USC intentionally submitted false data to US News in order to boost USC Rossier's standing in the rankings, and 2U—the party

---

[1] The Parties previously agreed to continue Defendants' time to file a motion to dismiss *Favell II* until after the resolution of the Motion to Stay and Motion to Remand. ECF 22.

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

responsible for marketing Defendants' online degree programs—led the effort to disseminate this ranking to prospective students.

The fraud targeted at least US News' "student selectivity" metrics—including acceptance rates for the online degree programs, and mean GRE scores of admitted students—which US News uses to calculate each school's ranking. Defendants' plan worked. In the 2010 edition of the Best Education Schools Rankings—which used data submitted by USC Rossier just after Defendants began their business relationship— USC Rossier soared from #38 to #22 in the rankings. USC Rossier consistently finished in the top 20 schools from 2009 through 2021.

Defendants aggressively advertised USC Rossier's fraudulently obtained Best Education Schools rankings to prospective online degree program students. Defendants reached the class during the Class Period through the following methods, among others: (1) 2U caused Defendants' advertisements to be disseminated by using paid online advertising; (2) USC has issued news releases advertising the rankings; (3) USC Rossier has celebrated its rankings via social media; and (4) USC has touted USC Rossier's US News ranking on rossier.usc.edu, and 2U has done the same on rossieronline.usc.edu.

2U led Defendant's marketing campaign, as it was primarily responsible for creating and implementing "marketing and promotional strategies" under the 2008 Services Agreement between Defendants. 2U spent more than half of what it earned in revenue on "program sales and marketing" from 2015 through 2021, and just under half of its revenue in 2022. A significant portion of these expenses were attributable to USC Rossier, whose partnership with 2U made up a disproportionate share of 2U's revenue. Moreover, 2U was intimately familiar with USC Rossier's admittance data, as it was required to target its marketing strategies toward those "students likely to be accepted" into Defendants' online degree programs.

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

Plaintiffs each placed significant weight on USC Rossier's US News ranking in deciding to apply to and attend the school's online degree programs and were therefore deceived by Defendants' scheme. None of the plaintiffs would have paid the lofty tuition and fees that USC Rossier charged for its online degree programs had USC Rossier been ranked in a lower position.

In *Favell I*, Plaintiffs, on behalf of themselves and a putative class of similarly situated USC Rossier online degree students from 2009 through 2021, bring causes of action for monetary damages under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* In *Favell II*, Plaintiffs, individually and on behalf of the putative class, bring claims for equitable relief under California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500), California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200), and the CLRA.

**Defendants' Statements:**

**USC**:  Plaintiffs filed *Favell I* (2:23-cv-846-GW-MAR) following USC's public dissemination of its investigation into whether its Rossier School of Education misreported information about the "selectivity" of its doctoral programs to U.S. News & World Report ("US News"), specifically whether Rossier reported "selectivity" data only for its more-selective Ph.D. program and not for its less-selective Ed.D. programs. Plaintiffs' First Amended Complaint in *Favell I* asserts a single claim for legal damages under the CLRA. USC has moved to dismiss *Favell I* on three grounds. (Dkt. #42.) First, USC argues that Plaintiffs' claim fails under the "reasonable consumer" standard because the US News rankings are mere opinion/puffery, and college graduates cannot attach the significance to them that Plaintiffs allege. Second, USC argues that Plaintiffs have failed to plead an economic injury-in-fact because they did not bargain for a particular ranking (rather, they bargained for an education, which they received), because their alleged lost benefit is speculative and conclusory, and because their theory of overpayment is contrary to common sense. Finally, USC argues that the educational

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

malpractice doctrine bars Plaintiffs' claim. These arguments support a dismissal in full. The Court will hear argument on July 6, 2023.

Plaintiffs separately (and needlessly) filed a factually duplicative putative class action, *Favell II* (2:23-cv-3389-GW-MAR). It differs only in its focus on equitable claims and remedies rather than on legal ones. USC will not repeat here its arguments in support of staying that second action; those can be found at Docket 31 (Motion) and 41 (Reply).  Suffice it to say, USC maintains that any scheduling order entered in connection with the July 6, 2023 Case Management Conference should be limited to *Favell I* and not include *Favell II*.

In the event this litigation proceeds past the initial pleading stage, USC maintains Plaintiffs will be unable to satisfy the Rule 23 requirements for class certification. There were many reasons students chose to enroll in Rossier's online programs that had nothing to do with external rankings. Plaintiffs will be unable to establish damages, either individually or on a classwide basis.  Plaintiffs face other impediments, too. They will struggle to establish a causal connection between USC Rossier's reporting of doctoral "selectivity" data to US News and the enrollment decisions by Rossier's online students, the majority of whom were Master's (not doctoral) students, and none of whom were Ph.D. students. Indeed, Rossier did not offer *any* online doctoral program until 2014, when it first introduced its only online doctoral program, an Ed.D. program focused on Organizational Change and Leadership (a program it has never offered in person). Plaintiffs' efforts to stretch the start date of their putative class action back to 2009 will fail for additional reasons as well. For example, they make much of an alleged "skyrocketing" of Rossier's US News ranking between 2009 and 2010—allegedly due to a new partnership with 2U to offer an innovative online Master's program—when, in truth, the 2009 ranking was an outlier; Rossier's pre-2009 rankings were similar to those in 2010 and thereafter. USC is unaware of any pre-2013 evidence of Rossier

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.*,
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

affirmatively excluding Ed.D. information in its reporting to US News, and the first year US News expressly directed Rossier to include Ed.D. data was 2018.

As a final preliminary note, US News is a third party that alone sets the valuation criteria for its annual rankings reports, and alone determines what weight it will attach to any particular criterion in any particular year. Plaintiffs have elected not to name US News as a party, so third-party discovery involving US News is a distinct possibility.

**2U**:   Both *Favell I* and *Favell II* arise out of revelations that USC allegedly submitted incomplete data about the graduate programs offered at its education school, USC Rossier, to U.S. News & World Report ("US News") in a bid to achieve a higher ranking.  This alleged misconduct has nothing to do with 2U, an education technology company that provides USC technology, marketing, and other services to support its online degree programs.  Plaintiffs do not allege that 2U ever submitted data to US News as part of its ranking process for USC Rossier, either alone or in conjunction with USC, or that 2U knew USC's rankings were based on misleading or incomplete data. Nor could they:  Plaintiffs' own allegations and the documents they cite—including the report from Jones Day explaining its comprehensive investigation into the alleged manipulation of USC Rossier's US News rankings—all confirm that 2U played no role in the alleged fraud directed at US News.  The Jones Day Report confirms that USC alone submitted data to US News, and that "[t]he ultimate decision-making authority and responsibility for the School's survey submissions rested with the School's dean." Ex. 2 at 1.  The Jones Day Report never references 2U.  And the contract between USC and 2U says nothing about any rankings process and does not provide 2U with authority to submit data to US News on USC's behalf, or even to review USC's submissions.  *See* Ex. A.  The contract also confirms that USC—not 2U—is "exclusively responsible for ensuring the academic quality and academic integrity" of the online programs, and that all promotional materials related to the online programs are "subject to USC's written approval prior to any use."  Ex. A at 1, 6.

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.*,
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

Plaintiffs nonetheless sued 2U alongside USC for including USC Rossier's US News rankings in marketing for its online programs. Plaintiffs rely on improper group pleading to try to stretch USC's interactions with US News into a false-advertising claim against 2U. As set forth in the pending motion to dismiss in *Favell I* (equally applicable to the claims in *Favell II*), this attempt fails for at least three reasons.

*First*, Plaintiffs have not alleged that 2U knew that the US News rankings were based on fraud. It is not enough for Plaintiffs to simply gesture at the fact that 2U is a for-profit corporation (like most corporations) and has a business relationship with USC. Those vague allegations say nothing about whether 2U knew USC was sending incomplete data to US News, such that the resulting rankings were misleading. (It did not.) Indeed, the purported "jump" in USC Rossier's US News ranking that Plaintiffs claim confirms fraud—a jump that they allege occurred in the 2010 edition of those rankings—was based on data that USC had to submit to US News at the latest in the *fall of 2008*. *See, e.g.*, FAC ¶¶ 51, 57; Ex. 2 at 4 (explaining the US News rankings process). But the agreement between 2U and USC wasn't even executed until October 29, 2008, *see* Ex. A at 1, and USC did not contemplate launching the first pilot program until January 2009, *id.* at 14. The notion that 2U was behind, involved in any way, or even knew about USC's alleged effort to provide incomplete or misleading data to US News to create that "jump" is implausible on its face, when Plaintiffs' allegations show that 2U was not even working with USC when the data had to be submitted.

*Second*, Plaintiffs have not established that the statements at issue are actionable. The marketing at issue was literally true—US News awarded USC Rossier the very rankings that were included in the marketing materials—and not misleading because it did not misrepresent US News's own conclusions or the data US News had considered. To the extent Plaintiffs' theory is that the US News rankings *themselves* were the false advertising, that theory is foreclosed by Ninth Circuit precedent explaining that these types of rankings, which are based on subjective inputs, are non-actionable statements

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.*,
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

of opinion and puffery.  Notably, Plaintiffs have acknowledged that they are not making any omissions-based claims, such that 2U should be held liable based on what it failed to disclose.

*Third*, Plaintiffs do not allege that they saw or relied on any statements *made or controlled by 2U*.  The three named Plaintiffs primarily claim to have seen allegedly false or misleading statements on the USC Rossier Website.  But Plaintiffs do not dispute, and their own sources reflect, that *USC* operated this website and made the alleged misstatements there.  FAC ¶ 45; Ex. A at 6.  It is black letter law that a defendant cannot be liable for the false advertising of another, so these allegations fail to state a false-advertising claim against *2U*.  And while Plaintiffs gesture at 2U's work carrying out USC's online advertising campaigns, including through its purchases of Google search terms, they do not identify with particularity *any* false or misleading statement they saw through those efforts, which renders this vague theory fatally incomplete.  Finally, although Plaintiffs gesture at the fact that they spoke to 2U advisors when deciding where to enroll, they do not allege that the advisors made *any* rankings-related statements to them or that the advisors had a duty to disclose anything about third-party rankings of USC Rossier.  In short, Plaintiffs have not pled reliance on a single false or misleading statement made by 2U, which is an independent ground to dismiss this case.

For each of those three independent reasons, 2U simply does not belong in this case.  Even if any of Plaintiffs' claims were to survive the motion to dismiss that is already pending in *Favell I* or the one that will be filed in *Favell II*, Plaintiffs will not be able to support their claims in discovery.

## II.   Discovery Plan

Below are the Parties' positions on the various Rule 26(f) discovery topics.  A complete proposed schedule for fact and expert discovery is provided in Section III.

8

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

### A. Rule 26(f)(3)(A): Initial Disclosures

The parties agree to provide initial disclosures no later than July 27, 2023.

### B. Rule 26(f)(3)(B): Subject, Timing, and Phasing of Discovery

The parties dispute whether discovery should proceed now, or whether it should be stayed to some degree pending resolution of the pending motion to dismiss in *Favell I*, and the motion to remand and motion to stay in *Favell II* (collectively, "Pending Motions"). Their positions are set forth below. The parties however agree that, if discovery proceeds, no formal bifurcation is necessary.

**Plaintiffs' Statement:**

***With respect to the discovery needed in this action,*** Plaintiffs will need information on a variety of topics, including:

    (a)   **US News Rankings Information and Investigation**, such as complete historical rankings for the Best Graduate Education Schools and Best Online MAT programs, instructions, and methodologies, as well as both the actual data submissions made by USC to USNWR and the full data sets and related enrollment statistics in USC's possession. Plaintiffs will also need the information used to compile the Jones Day Report.

    (b)   **Recruiting and Advertising Materials**, including historical copies of USC Rossier's website (both the main and online program pages), online advertisements, other recruiting materials, such as brochures and emails, and information pertaining to the advertising's dissemination. Plaintiffs will also need discovery on scripts and templates used by recruiters and advisors and related policies and procedures, as well as other forms and applications used in recruiting, enrolling, and maintaining enrollment. Plaintiffs also need discovery in how potential applicants were identified and targeted for recruiting and enrollment.

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

(c) **Materiality and Damages**, including historical costs and fees associated with each program, data on overall costs of attendance and indebtedness, information and analysis of broader market and costs of competing and comparative programs. Plaintiffs will also need information as to the value and importance of rankings in education decision-making, consumer demand and public trust in online education, and other market considerations.

(d) **Class Member Information**, including data to show numbers of students admitted and enrolled in each semester and program throughout the class period, states of residence, and tuition and fees paid, complaints and inquiries, etc. In addition to topics addressed above, Plaintiffs will also need all contracts and terms between Class Members and Defendants, as well as communications with class members about rankings and related topics (e.g. selectivity). Class member identities and contact information will be needed for, at a minimum, class notice.

(e) **Defendants' Roles**, including details on their contractual arrangement, involvement in key decisions relating to the rankings, advertising/recruiting, and admissions, as well as financial incentives.

Plaintiffs expect that USC will have access to the majority of information described in categories (a), (d), and (e), though 2U is likely to have some responsive information in its sole possession and control. As for categories (b) and (c), Plaintiffs expect that both Defendants will have responsive information that will overlap only in part. In particular, certain documents needed for class certification, particularly those pertaining to the extensive online advertising efforts described in Paragraphs 77-78,

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

115, ,118, 131-32 of the *Favell I* Amended Complaint, ECF 32, may be in 2U's exclusive control.[2]

**With respect to Defendants' position on delaying discovery until the Pending Motions have been decided,** Plaintiffs believe a broad stay of discovery is not warranted under the circumstances. While Plaintiffs believe that discovery can be managed in a way that avoids enormous ESI burdens at the onset, a blanket stay on even negotiating parameters will unduly delay the proceedings.

In considering whether to stay discovery pending resolution of a dispositive motion, a "case-by-case analysis is required." <u>*Soundgarden v. UMG Recordings, Inc.*</u>, 2020 WL 4342261, at *1 (C.D. Cal. May 11, 2020) (internal quotations omitted). Courts evaluating such requests look to factors such as whether additional discovery would assist with the resolution of the motion, and whether a preliminary analysis of the motion indicates an "immediate and clear possibility that it will be granted," as well as "the nature and complexity of the action"; "the posture or stage of the litigation"; "the expected extent of discovery"; and other relevant considerations. *Id.* at *2.

As a threshold matter, there is no "immediate and clear possibility" that Defendants' motions to dismiss in *Favell I* will be granted with prejudice. Among other things, the rankings manipulation is established by USC's own publicly released report and the complaint is replete with allegations, including quotes from Defendants and key executives, that the misrepresentations were material to consumers.  *See, e.g.,* FAC ¶ 63 (quoting 2U's SEC filing stating "[a]ny decline in USC's reputation…could adversely affect the number of students that enroll in these two programs") see also 5, 41,47, 51-56, 88-94. This is not the "rare situation" in which a court can conclude at the Rule

---

[2] 2U is incorrect that no statements are attributable to it. The online advertising identified in the above paragraphs was disseminated by them, portions of the website were jointly controlled, FAC ¶¶ 45, 82, and USC and 2U consulted on a coordinated advertising campaign, which included U2 employees holding themselves out as USC admissions personnel, who in turn discussed the rankings with Plaintiffs, FAC ¶¶ 41-46, 108, 121.

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

12(b)(6) stage that reasonable consumers were not misled. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2009).[3]

Should the Court be inclined to stay discovery in some way, Plaintiffs propose the parties first focus on exchanging written discovery requests, as well as producing certain documents that are easily located and/or will inform on how to structure an ESI agreement. Such an approach is warranted here, as a number of threshold issues will need to be worked out before a broader ESI search can even begin. For example:

- Plaintiffs seek to represent a class of students who were enrolled in USC Rossier's online graduate programs during the period when the school was engaged in rankings fraud, i.e., between April 1, 2009 and April 27, 2022. Plaintiffs' need for older documents may present various issues that will need to be resolved.

- Because there are two Defendants, the parties will need to find ways to minimize duplication in their production. While 2U objects that Plaintiffs' requests do not try to minimize its burden, Plaintiffs' counsel attempted to discuss with Defendants at the 26(f) conference the categories of documents each had and ways to minimize duplication, but no progress was made. Plaintiffs intend to work with Defendants on these issues, and the initial disclosures will be useful in advancing that. If 2U does not have responsive documents, it is free to say so.

- The parties will need to negotiate the protective order and general ESI protocol to address federal student privacy laws.

- Discovery will be needed from U.S. News, which may object on First Amendment and confidentiality grounds, and thus, Plaintiffs should be able to issue that subpoena and begin those negotiations now.

Ultimately, regardless of whether discovery is open in full or in part, Plaintiffs' preference is for the parties to first focus on discovery that can inform a more strategic comprehensive ESI process. In so doing, Plaintiffs would engage in discussions on the issues identified above, as well as focus first on obtaining (1) the documents collected in USC's pre-litigation investigation, which, as it indicates in its statement, USC is amenable to making available at least in part, as part of this preliminary phase; (2) readily

---

[3] It is unlikely that *Favell II* will require more than a de minimis amount of discovery beyond what is needed in *Favell I*. In the event one or both of Defendants' motions to dismiss in Favell I are resolved before the pending motions in *Favell II*, the mere procedural uncertainty in *Favell II* is not reason to delay discovery in *Favell I*.

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.*,
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

accessible documents such as policies, procedures, contracts, tuition schedules, and the like; (3) other documents that can inform ESI parameters and custodian selection, such as organizational charts; (4) documents relating to the Plaintiffs; and (5) responses to interrogatories.

**Defendants' Statements:**

**USC**:   USC generally agrees with 2U's statement below. USC, however, recognizes that certain documents related to Plaintiffs' allegations have already been collected in the course of a pre-litigation investigation by USC. USC therefore will continue meeting with Plaintiffs to discuss an earlier production of those materials (to the extent responsive and not otherwise privileged), and to finalize a protective order.

**2U**:   Any discovery against 2U is inefficient, premature, and unduly burdensome at this time, while it is not yet clear whether *Favell II* will be litigated in state or federal court, and 2U's and USC's pending Motions to Dismiss *Favell I* should dispose of that entire case.   2U respectfully submits that discovery should be stayed pending the outcome of the Motion to Remand and Motions to Dismiss.  In addition, as Plaintiffs' statement above confirms, USC and US News (and not 2U) have the most relevant discovery.  At minimum, then, 2U submits that Plaintiffs should pursue that discovery before subjecting 2U overbroad and unnecessary requests.

It is "sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery." *Top Rank, Inc. v. Haymon*, No. CV 15-4961-JFW, 2015 WL 9952887, at *2 (C.D. Cal. Sept. 17, 2015) (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (explaining that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Mujica v. AirScan Inc.*, 771 F.3d 580, 592-93 & n.7 (9th Cir. 2014) (observing that "plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it") (emphasis in original).  Staying discovery pending the

13
JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.*,
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

outcome of a dispositive motion also "furthers the goal of efficiency for the court and litigants" because "the unsettled nature of the pleadings would result in a waste of judicial resources." *United States v. Dynamic Med. Sys. LLC*, No. 1:17-cv-01757-JLT, 2023 WL 1995522, at *5 (E.D. Cal. Feb. 14, 2023) (staying discovery pending outcome of motion to dismiss) (citing Fed. R. Civ. P. 1; *Rutman*, 829 F.2d at 729); *see also, e.g.*, *Kincheloe v. Am. Airlines, Inc.*, No. 21-cv-00515-BLF, 2021 WL 5847884, at *3 (N.D. Cal. Dec. 9, 2021) (staying discovery pending outcome of motion to dismiss because "efficiency and conservation of the parties' resources also favors a discovery stay").

In this Circuit, a temporary stay of discovery is appropriate where the pending motion is (1) "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed" and (2) "can be decided absent additional discovery." *Patten v. Deschamps*, No. CV 18-1869-VAP, 2018 WL 6307895, at *1 (C.D. Cal. Sept. 7, 2018) (collecting cases and granting a stay motion after considering these factors) (citations omitted); *accord Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming district court's exercise of discretion staying discovery pending resolution of motion to dismiss) (citation omitted); *see also, e.g.*, *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. 19-ML-2905-JAK, 2022 WL 19236923, at *1 (C.D. Cal. Sept. 6, 2022) (staying discovery pending resolution of a motion to dismiss); *Yamaski v. Zicam LLC*, No. 21-CV-02596-HSG, 2021 WL 3675214, at *1 (N.D. Cal. Aug. 19, 2021) (same); *In re Nexus 6p Prods. Liab. Litig.*, No. 17-cv-02185-BLF, 2017 WL 3581188, at *1-3 (N.D. Cal. Aug. 18, 2017) (same); *Top Rank*, 2015 WL 9952887, at *1-3 (same); Both requirements are satisfied here.

***First***, 2U's pending Motion to Dismiss is dispositive of the entire case against it. For example, 2U's Motion to Dismiss explains that the challenged statements— marketing materials that reflect the US News rankings of USC Rossier or refer to USC Rossier as "top ranked"—are not actionable as a matter of law.  And it challenges the sufficiency of the threadbare allegations Plaintiffs have leveled against 2U, who had

14
JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.*,
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

nothing to do with the alleged rankings-related misconduct and should never have been made part of this case. As noted above, Plaintiffs do not (and cannot) plead that 2U knew (or even should have known) that the challenged statements were misleading, and none of the statements that Plaintiffs purport to have relied upon was made by 2U, as they only appeared on a website controlled by USC. *See, e.g.*, *In re ZF-TRW*, 2022 WL 19236923, at *4-5 (staying discovery where a motion to dismiss raised potentially case-dispositive legal and factual issues, including whether allegations levied against "inconsequential" defendant met Rule 9(b)); *In re Nexus*, 2017 WL 3581188, at *2 (staying discovery where Defendant had "strong arguments for dismissal").

**Second**, 2U's Motion to Dismiss is based solely on the allegations and documents incorporated by reference in the Complaint, without the need for discovery. 2U appreciates Plaintiffs' suggestions above about prioritizing "easily located" documents. But even if some of the materials encompassed by the 60 broad requests for production that Plaintiffs have informally shared with USC and 2U to preview the documents Plaintiffs intend to seek—which purport to cover a 14-year time period, dating back to April 1, 2009—might be easier to locate than others, **none** is necessary to resolve the Motion to Dismiss. In fact, many are neither tailored to 2U nor relevant to Plaintiffs' claims against 2U at all. For example, Plaintiffs cut-and-paste the same overbroad requests they sent to USC without updating them. As another example, Plaintiffs have requested discovery into 2U's compliance with 20 U.S.C. § 1094(a)(20), a part of the Higher Education Act that governs tuition-sharing arrangements between schools and third parties. But that request has no plausible relevance to Plaintiffs' complaint that 2U allegedly should not have included USC Rossier's US News rankings in marketing materials. The burden and expense of negotiating overbroad and irrelevant discovery (which would still be necessary to effectuate Plaintiffs' proposal to prioritize certain materials) as well as of attempting to respond far outweigh any impact of a temporary discovery stay while the Court assesses whether Plaintiff's claims can

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

survive either Defendant's Motion to Dismiss.  *See, e.g., Top Rank*, 2015 WL 9952887, at *1 (staying discovery "until the pleadings are settled," where compliance would be "costly and time-consuming" and any prejudice to plaintiffs would be "extremely limited" because the hearing on the motion to dismiss was weeks away).

2U respectfully requests that the Court stay discovery against it while it considers the Motions to Dismiss. If discovery proceeds, 2U expects that it will be necessary to explore topics including:  the factors contributing to Plaintiffs' selection of the USC Rossier programs they attended, what other programs they considered, any alleged reliance on any 2U marketing materials, and Plaintiffs' basis for asserting that they incurred damages.

### C.      Rule 26(f)(3)(C): Disclosure, Discovery, and Preservation of ESI

The Parties discussed disclosures, discovery, and ESI, and confirmed that all Parties are complying with their obligations to reasonably preserve information that currently exists.

As described above, Defendants believe discovery is premature at this point (other than the limited discovery described by USC above), and Plaintiffs disagree. Should discovery proceed, however, the Parties will work in good faith with each other on a reasonable approach to document productions, disclosure, discovery, and preservation of electronically stored information, and will meet and confer with as appropriate and will endeavor to resolve any issues without the need for Court involvement.  The Parties are aware of their duties regarding the preservation of discoverable information, including ESI, and have taken reasonable measures to comply with those duties, as required by the Federal Rules of Civil Procedure.  The Parties also intend to negotiate and stipulate to protocols that will govern the production and use of discovery materials, including a protective order that will govern the production and use of confidential materials.

16

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.*,
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

### D.     Rule 26(f)(3)(D): Privilege and Protection of Materials

**Plaintiffs' Statement:**

As noted above, there are a few categories of documents, including certain information that Defendants maintain on students and information held by third party US News, that may require special procedures for addressing confidentiality concerns. Plaintiffs intend to work with Defendants and third parties to negotiate protocols for the production of this information.

Plaintiffs will also work with Defendants to resolve privilege disputes and other confidentiality issues as they arise.

**Defendants' Statement:**

As described above, discovery is premature at this point (other than the limited discovery described by USC above).  Should discovery proceed against 2U, however, 2U will work in good faith with Plaintiffs on a reasonable approach to issues relating to claims of privilege or of protection of materials, and will meet and confer with Plaintiffs as appropriate and will endeavor to resolve any issues without the need for Court involvement.  The same is true for USC, including for discussions during the requested discovery stay that relate to the subset of USC documents identified above for earlier production. The Parties also intend to negotiate and stipulate to a protective order that may further govern the production and use of privileged / confidential materials produced in discovery.

### E.     Rule 26(f)(3)(E) & (F): Changes and Other Orders

The Parties agree that the service of discovery can be effectuated via e-mail to all counsel of record and treated as the same as hand delivery.  Other than Defendants' request to stay discovery pending resolution of motions to dismiss, the Parties do not seek any other modifications or limitations on discovery beyond what is contemplated in the federal and local rules.

17
JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

### III.   Other Local Rule 26-1 Topics

The Parties have discussed the matters identified in L.R. 26-1, and report as follows:

(a)   Complex Cases: While the parties may consult the Manual for Complex Litigation as needed, they do not believe any formal adoption or modification of any procedures therein is needed at this time.

(b)   Motion Schedule: See Section IV.

(c)   ADR: The Parties have not yet engaged in efforts to settle or resolve this case. The Parties believe that settlement efforts are premature at this time, but may be amenable to mediation, ADR, or other settlement discussions at a later date.

(d)   Trial Estimate: Plaintiffs estimate 3-4 weeks for trial.  Defendants believe it is premature to provide a trial estimate when there are pending motions in both *Favell I* and *Favell II* that have the potential to affect whether, where, and in how many different cases and claims will be litigated.  Defendants believe they will be in a better position to provide a trial estimate once the motions to dismiss, remand, and/or stay have been resolved.

(e)   Additional Parties: As this is a class action, additional plaintiffs may seek to intervene or serve as class representatives. A deadline for adding additional parties will be included in the proposed scheduling order.

(f)   Expert Witnesses: See Section IV.

### IV.   Motions and Scheduling

Both Defendants have Motions to Dismiss *Favell I* currently pending, and USC has filed a Motion to Stay *Favell II* that 2U does not oppose.  Both Defendants anticipate filing Motions to Dismiss *Favell II* if the matter proceeds in this Court, which Plaintiffs intend to oppose. If any claims survive various Motions to Dismiss, Defendants anticipate opposing any effort by Plaintiffs' to certify a class in either *Favell I or II* and

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

moving for summary judgment as appropriate.  Plaintiffs may also seek to file a motion for summary judgment, at least on some elements.

In terms of case scheduling, the Parties agree that additional clarity on the Pending Motions would help inform the overall schedule, but disagree on some specifics.

**Plaintiffs' Statement:**

In *Favell I*, Plaintiffs propose the parties meet and confer and submit a proposed scheduling order within 14 days of the rulings on the motions to dismiss *Favell I,* regardless of the posture of *Favell II* at that time. In other words, should the motions for remand and to stay in *Favell II* be unresolved at that juncture, resolution of those motions is not necessary for *Favell I* to advance. Should *Favell II* ultimately proceed in this Court, discovery will overlap and can be coordinated with what has been negotiated and taken in *Favell I.*

In *Favell II*, after the resolution of the motions to remand and stay in *Favell II*, the parties should meet and confer. If the case is to proceed in federal court, Plaintiffs propose that the parties submit a proposed schedule for the briefing on the motion to dismiss. If a schedule has been submitted in *Favell I* at that time, the parties can discuss then (and if needed, again after the resolution of any motion to dismiss in Favell II), whether modification of the schedule in *Favell I* is needed and other case management issues as needed.

**Defendants' Statement:**

Defendants propose that the parties meet and confer and submit a proposed scheduling order within 14 days of (a) rulings on the motions to dismiss *Favell I*, if the motion to remand *Favell II* is granted, or (b) rulings on forthcoming motions to dismiss *Favell II*, if the motion to remand and the motion to stay *Favell II* are denied.

19

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

Date: June 29, 2023

Respectfully Submitted,

*/s/ Kristen G. Simplicio*
Kristen G. Simplicio (Bar No. 263291)
Anna C. Haac (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue Northwest,
Suite 1010
Washington, DC 20006
Telephone: (202) 919-5852
Facsimile: (202) 973-0950
*ksimplicio@tzlegal.com*
*ahaac@tzlegal.com*

Annick M. Persinger (Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
Telephone: (213) 425-3657
*apersinger@tzlegal.com*

Sabita J. Soneji (Bar No. 224262)
Cameron R. Partovi (Bar No. 319589)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
*ssoneji@tzlegal.com*
*cpartovi@tzlegal.com*

Eric Rothschild (*pro hac vice*)
**NATIONAL STUDENT LEGAL
DEFENSE NETWORK**
1701 Rhode Island Avenue Northwest
Washington, DC 20036
Telephone: (202) 734-7495
*eric@defendstudents.org*

*Counsel for Plaintiffs and the Proposed Class*

20

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

Dated: June 29, 2023                    SHOOK HARDING & BACON LLP

By */s/ Michael L. Mallow*
   Michael L. Mallow (Bar No. 188745)
    mmallow@shb.com
   Mark D. Campbell (Bar No. 180528)
    mdcampbell@shb.com
   Nalani L. Crisologo (SBN: 313402)
   ncrisologo@shb.com
   2049 Century Park East, Suite 3000
   Los Angeles, California 90067
   Telephone: 424-285-8330
   Facsimile: 424-204-9093

   Holly Pauling Smith (*pro hac vice*)
   hpsmith@shb.com
   Taylor B. Markway (*pro hac vice*)
   tmarkway@shb.com
   2555 Grand Boulevard
   Kansas City, Missouri 64108
   Telephone: 816-474-6550
   Facsimile: 816-421-5547

*Attorneys for Defendant University of Southern California.*

Dated: June 29, 2023                    LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*
   Elizabeth L. Deeley (Bar No. 230798)
    elizabeth.deeley@lw.com
   Melanie M. Blunschi (Bar No. 234264)
    melanie.blunschi@lw.com505
   Montgomery Street, Suite 2000
   San Francisco, California 94111
   Telephone: +1.415.391.0600
   Facsimile: +1.415.395.8095

   Roman Martinez (*pro hac vice* pending)
   *roman.martinez@lw.com*
   555 Eleventh Street, NW, Suite 1000
   Washington, D.C. 20004-1304
   Telephone: +1.202.637.2200
   Facsimile: +1.202.637.2201

*Attorneys for Defendant 2U, Inc.*

21

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR

# ATTESTATION

I hereby attest pursuant to L.R. 5-4.3.4(a)(2)(i) that all other signatories listed above, and on whose behalf the filing is submitted, concur in the content of this filing and have authorized this filing.

Dated: June 29, 2023            By: */s/ Kristen G. Simplicio*
                                    Kristen G. Simplicio

JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)
*Favell, et al., v. University of Southern California, et al.,*
No. 2:23-cv-00846-GW-MAR; 2:23-cv-003389-GW-MAR