LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
 elizabeth.deeley@lw.com
Melanie M. Blunschi (CA Bar No. 234264)
 melanie.blunschi@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Roman Martinez (*pro hac vice*)
 roman.martinez@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

*Attorneys for Defendant 2U, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| IOLA FAVELL, SUE ZARNOWSKI, MARIAH CUMMINGS, and AHMAD MURTADA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSITY OF SOUTHERN CALIFORNIA and 2U, INC., <br><br> Defendants. | Case No. 2:23-cv-00846-GW(MARx); <br> Case No. 2:23-cv-03389-GW(MARx) <br><br> <u>CLASS ACTION</u> <br><br> **2U, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT IN *FAVELL I* AND FIRST AMENDED CLASS ACTION COMPLAINT IN *FAVELL II*; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge: Hon. George H. Wu <br> Date:   November 16, 2023 <br> Time:  8:30 a.m. <br> Place:  Courtroom 9D <br><br> *[Request for Judicial Notice; Declaration in Support; Proposed Orders concurrently filed herewith]* |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1

## **NOTICE OF MOTION AND MOTION TO DISMISS**

2   PLEASE TAKE NOTICE that on November 16, 2023 at 8:30 a.m., or as soon

3   thereafter as the parties may be heard, before the Honorable George H. Wu, District

4   Judge, United States District Court for the Central District of California, in the First

5   Street Courthouse, Courtroom 9D, 350 W. 1st Street, Los Angeles, CA 90012,

6   Defendant 2U, Inc. ("**2U**") will, and hereby does, move to dismiss the Second

7   Amended Class Action Complaint ("**SAC**") in 2:23-cv-00846-GW(MARx) ("*Favell*

8   *I*") and the First Amended Class Action Complaint ("**FAC**") in 2:23-cv-03389-

9   GW(MARx) ("*Favell II*")—both brought by Plaintiffs Iola Favell, Sue Zarnowski,

10   Mariah Cummings, and Ahmad Murtada (collectively, "**Plaintiffs**")—pursuant to

11   Federal Rules of Civil Procedure ("**FRCP**") 9(b) and 12(b)(6).

12   Pursuant to Local Rule 7-3, the Parties thoroughly discussed the substance

13   and potential resolution of the filed motion by videoconference on August 23, 2023.

14   This motion is based on this Notice of Motion and Motion to Dismiss, the following

15   Memorandum of Points and Authorities, 2U's Request for Judicial Notice, the

16   Declaration of Melanie M. Blunschi and the exhibits thereto, all pleadings and

17   papers in this action, and any oral argument of counsel.

18

19

20   Dated:  August 31, 2023          Respectfully submitted,

21                                    LATHAM & WATKINS LLP
22                                    Elizabeth L. Deeley
                                      Melanie M. Blunschi
23                                    Roman Martinez

24
                                      By  /s/ *Melanie M. Blunschi*
25                                        Melanie M. Blunschi

26                                    *Attorneys for Defendant 2U, Inc.*

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

2

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................... 9

II.     FACTUAL BACKGROUND ........................................................ 10

    A.     2U's Relationship With USC ............................................. 10

    B.     The U.S. News & World Report Rankings ......................... 11

    C.     USC's Counsel Investigates USC Rossier's US News
        Rankings ............................................................................ 12

III.    PROCEDURAL BACKGROUND ................................................ 13

IV.     LEGAL STANDARDS ................................................................ 14

V.      ARGUMENT ............................................................................... 15

    A.     Plaintiffs Have Not Pled An Actionable Misstatement By
        2U ...................................................................................... 15

        1.     The "Top-Ranked" Statements Are Nonactionable
            Puffery ................................................................... 16

        2.     The US News Rankings Are Nonactionable As To 2U ......... 17

            a.     US News Rankings Are Nonactionable
                Opinions ...................................................... 18

            b.     Plaintiffs Do Not Allege Claims Against 2U
                For "Knowingly Report[ing] False Data To
                USC" .......................................................... 19

    B.     Plaintiffs Have Not Pled Reliance On A 2U
        Advertisement ................................................................... 21

    C.     Plaintiffs Have Not Pled That 2U Knew Or Should Have
        Known The Rankings Were False ....................................... 25

        1.     Plaintiffs Fail To Plead Actual Knowledge ............................ 25

        2.     Plaintiffs Fail To Plead Negligence ...................................... 25

    D.     Plaintiffs' CLRA Claim Fails For Additional Reasons ...................... 32

    E.     Plaintiffs Fail To Plausibly Allege An "Unfair" Business
        Practice By 2U That Violates The UCL ............................. 34

VI.     CONCLUSION ............................................................................ 38

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

3

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alert Enter., Inc. v. Rana*,
   No. 22-cv-06646-JSC, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023)..............28

*Anunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005)....................................................16

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) .................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................14, 30

*Asis Internet Servs. v. Consumerbargaingiveaways*, *LLC*,
   622 F. Supp. 2d 935 (N.D. Cal. 2009) ......................................................23

*Aviation Charter, Inc. v. Aviation Res. Grp.*,
   416 F.3d 864 (8th Cir. 2005)...................................................................19

*Bank of the West v. Superior Court*,
   2 Cal. 4th 1254 (1992)...........................................................................32

*Bell Atl. Corp. v. Twombly*,
   540 U.S. 544 (2007) ..........................................................................14, 28

*Cel-Tech Commc'ns, Inc., v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999)......................................................................34, 36

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006)...........................................................23, 24

*CollegeNet, Inc. v. Embark.Com, Inc.*,
   230 F. Supp. 2d 1167 (D. Or. 2001)..........................................................17

*Daro v. Superior Ct.*,
   151 Cal. App. 4th 1079 (2007).................................................................38

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)...................................................................15

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152, 1164 (9th Cir. 2012) ....................................................34, 35, 37

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................................27, 30

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) .............................................................16, 19

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) .............................................................................26, 31

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
   69 F.4th 665 (9th Cir. 2023) ..................................................................................19

*Gregory v. Albertson's, Inc.*,
   104 Cal. App. 4th 845 (2002) .................................................................................37

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ............................................................................15, 22

*In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*,
   882 F. Supp. 915 (C.D. Cal. 1994) .........................................................................16

*In re Countrywide Fin. Corp. Mort.-Backed Sec. Litig.*,
   943 F. Supp. 2d 1035 (C.D. Cal. 2013) ..................................................................20

*Janney v. Mills*,
   944 F. Supp. 2d 806 (N.D. Cal. 2013) ...................................................................23

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..........................................................................14, 23

*Khan v. Med. Bd.*,
   12 Cal. App. 4th 1834 (1993) .................................................................................31

*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) .................................................................26

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ...............................................................................21

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................................37

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

5

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

*Letizia v. Facebook, Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) .......................................................... 38

*Lindner v. Occidental Coll.*,
   No. 20-8481-JFW, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ................... 33

*Lorenz v. Sauer*,
   807 F.2d 1509 (9th Cir. 1987) ................................................................ 14, 23

*Martinez v. Wells Fargo Home Mortg., Inc.*,
   598 F.3d 549 (9th Cir. 2010) .......................................................................... 35

*Musgrave v. Taylor Farms Pac., Inc.*,
   No. 18-cv-02841-JSW, 2018 WL 11033583, (N.D. Cal. Oct. 17, 2018) ......... 21

*Musgrave v. Taylor Farms Pac., Inc.*,
   No. 18-cv-02841-JSW, 2019 WL 8230850, (N.D. Cal. Feb. 20, 2019) ........... 22

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ........................................................................ 16

*Nolan v. Ford*,
   No. E073850, 2022 WL 1513308 (Cal. Ct. App. May 13, 2022) ..................... 25

*Park v. Cytodyne Techs., Inc.*,
   No. GIC 768364, 2003 WL 21283814 (Cal. Super. Ct. May 30, 2003) ........... 31

*People v. Duz-Mor Diagnostic Lab., Inc.*,
   68 Cal. App. 4th 654 (1998) ........................................................................... 37

*People v. Forest E. Olson, Inc.*,
   137 Cal. App. 3d 137 (Cal. Ct. App. 1982) ............................................... 26, 31

*Perez v. Kroger Co.*,
   336 F. Supp. 3d 1137 (C.D. Cal. 2018) .......................................................... 36

*Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ..................................................................... 22, 26

*Perkins v. Philips Oral Health Care, Inc.*,
   No. 12-cv-1414-H, 2012 WL 12848176 (S.D. Cal. Dec. 7, 2012) ................... 32

*PHH Corp. v. CFPB*,
   839 F.3d 1 (D.C. Cir. 2016) ............................................................................ 36

LATHAM&WATKINS™
ATTORNEYS AT LAW

6

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

*PhotoMedex, Inc. v. Irwin*,
   601 F.3d 919 (9th Cir. 2010).................................................................17, 20

*Podolsky v. First Healthcare Corp.*,
   50 Cal. App. 4th 632 (1996)..................................................................37

*POM Wonderful LLC v. Purely Juice, Inc.*,
   362 F. App'x 577 (9th Cir. 2009)..........................................................26

*Reed v. NBTY, Inc.*,
   No. 13-0142-JGB, 2014 WL 12284044 (C.D. Cal. Nov. 18, 2015)............22, 24

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015)................................................................35

*San Diego Hospice v. Cnty. of San Diego*,
   31 Cal. App. 4th 1048 (1995)................................................................32

*Shu v. Toyota Motor Sales USA, Inc.*,
   No. 3:22-cv-04661-LB, 2023 WL 3028071 (N.D. Cal. Apr. 19, 2023)............25

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001).................................................................14

*Stewart v. Electrolux Home Prods., Inc.*,
   304 F. Supp. 3d 894 (E.D. Cal. 2018)...................................................27

*Tomek v. Apple*,
   636 F. App'x 712 (9th Cir. 2016)..........................................................25

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013)..................................................16

*Warner v. Tinder Inc.*,
   105 F. Supp. 3d 1083 (C.D. Cal. 2015).................................................15

*Webb v. Smart Document Sols., LLC*,
   499 F.3d 1078 (9th Cir. 2007)..............................................................35

*Williams v. Tesla, Inc.*,
   No 20-cv-08208-HSG, 2023 WL 1072000 (N.D. Cal. Jan. 27, 2023)............26

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012)..............................................................25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

7

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

*ZL Techs., Inc. v. Gartner, Inc.*,
    709 F. Supp. 2d 789 (N.D. Cal. 2010) .............................................................19

**STATUTES**

20 U.S.C. § 1094(a)(20) ........................................................................................33

34 C.F.R. § 668.14(b)(22)(ii)(L) (2010).............................................................34

75 FR 34,806, 34,808 (2010) ...............................................................................34

Cal. Civ. Code § 17200 ..........................................................................................8

Cal. Civ. Code § 17500 ........................................................................................12

Cal. Civ. Code § 1770............................................................................................8

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs' theory in both the Second Amended Complaint ("**SAC**") in *Favell I* and the First Amended Complaint ("**FAC**") in *Favell II* remains the same as before: that the University of Southern California ("**USC**") submitted incomplete data about the selectivity of doctoral programs offered at its education school, USC Rossier, to U.S. News & World Report ("**US News**") in a bid to achieve a higher rank.  But as this Court recognized when dismissing Plaintiffs' claims in *Favell I*, alleged misconduct by USC is not sufficient to state a claim against 2U, an education technology company that helps support four of USC Rossier's sixteen different degree programs.  Plaintiffs still do not claim that 2U played any role in the US News ranking process for USC Rossier, which involved only US News and USC.

Plaintiffs nonetheless continue to press misrepresentation-based claims against 2U in both cases, alleging that it violated California's False Advertising Law ("**FAL**"), Cal. Civ. Code § 17500; Consumers Legal Remedies Act ("**CLRA**"), Cal. Civ. Code § 1770; and Unfair Competition Law ("**UCL**"), Cal. Civ. Code § 17200, by repeating USC Rossier's US News rankings in advertising.  These claims fail for multiple reasons.  As before, the US News comparative rankings themselves are nonactionable opinions and Plaintiffs do not allege that 2U (as distinct from USC) "knowingly reported false data to US News" for use in generating those rankings. *Favell I* ECF No. 63 ("**Order**") at 8.  In addition, Plaintiffs still do not allege that 2U made or controlled any statement they saw, even though California law does not impose vicarious liability for statements by others.

That is only the start.  Plaintiffs' CLRA claims additionally fail for the same reason the Court dismissed Plaintiffs' claims before:  Plaintiffs have not plausibly alleged that 2U *actually knew* the rankings were false.  Instead of attempting to fix that deficiency, Plaintiffs chose to recast their fraud-based allegations against 2U as sounding in negligence.  But even if mere negligence was enough to state a CLRA

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

claim, Plaintiffs have not provided any fact from which to infer that 2U should or even *could* have known the rankings were false.  Plaintiffs do not (and cannot) allege that 2U saw any of USC's submissions to US News.  Though they baldly assert that 2U "must have" had access to the admittance data for *all* of USC Rossier's programs and should have compared it to the data US News published, they do not provide a single *fact* to support this, and rank speculation cannot state a claim.  Their theory is also implausible because 2U helped support only one of the five USC doctoral programs that impacted its ranking—and the information needed to verify the rankings laid solely in the hands of USC, the alleged fraudster.  In addition, by Plaintiffs' telling, the fraud and subsequent rankings jump began in 2009, but 2U did not start supporting a Rossier doctoral program until *2015*.  Plaintiffs' new negligence theory does not hold up, and their failure to plead negligence dooms their FAL and UCL claims too.

Plaintiffs also claim for the first time that 2U's tuition-sharing arrangement with USC is an "unfair" business practice under the UCL.  This is baseless.  Such arrangements have been *expressly permitted by* federal law and the U.S. Department of Education for decades, and thus cannot be "unfair" under the UCL—period.

This Court should dismiss all of Plaintiffs' claims with prejudice.

## II.    FACTUAL BACKGROUND

### A.    2U's Relationship With USC

The core facts in the FAC and SAC are the same as earlier iterations of both complaints, including the FAC in *Favell I* that this Court previously dismissed.  To recap:  USC is a private university, and USC Rossier is its graduate school of education.  Compls. ¶ 23.[1]  USC Rossier offers sixteen different master's and doctoral degrees, including four Master's of Arts in Teaching ("**MAT**"), six Master's of Education, a Doctor of Philosophy ("**PhD**"), and five Doctor of

---

[1] Paragraphs 1-171 in the *Favell I* SAC and the *Favell II* FAC are substantively identical.  "Compls." refers to both complaints.

1   Education ("**EdD**") programs.  *Id.* ¶¶ 58, 62, 67; Exs. 4 and 5 (listing programs).[2]
2   Over the years, USC Rossier began offering certain degree programs online.
3   Compls. ¶¶ 6, 8.

4       USC has sole responsibility for administering its eight in-person programs and
5   four of its eight online programs.  It relies on 2U for certain services—such as
6   marketing and technology infrastructure support—for its four other online programs:
7   the online MAT, the online MAT for Teaching English to Speakers of Other
8   Languages, the online Master of Education in School Counseling, and the online
9   EdD in Organizational Change and Leadership ("**EdD OCL**").  *See id.* ¶¶ 58, 67;
10  Ex. 6 at 4-5 (listing programs).  Relevant here, USC contracted with 2U to support
11  the online MAT in October 2008, and in 2015, 2U also agreed to support the online
12  EdD OCL.  Ex. A at 1; Compls. ¶¶ 24, 67.

13      USC expressly retains ultimate control over any marketing materials and
14  promotional strategies related to the online programs 2U helps support.  For
15  example, Defendants' contract states that 2U must develop and execute "a written
16  plan" for marketing the online programs, but that this "plan and all materials related
17  to the [online programs] shall be subject to USC's written approval prior to any use
18  thereof."  Ex. A at 1(A).  The contract further states that "*USC* shall promote the
19  [online programs] on the Rossier website (including, but not limited to, the
20  homepage of that site)."  *Id.* at 2(A) (emphasis added).

21          **B.    The U.S. News & World Report Rankings**

22      Each year, US News publishes rankings of participating schools in various
23  categories.  To generate these rankings, US News solicits and "collect[s] statistical
24  and reputation data directly from education schools."  Ex. 2 at 2.  Participating
25  schools complete "a lengthy survey" on their education programs.  Ex. 1 at 3.

26

27  _____

28  [2] Each numerical exhibit cited is attached to the concurrently filed Declaration of
    Melanie M. Blunschi, and is incorporated by reference and/or subject to judicial
    notice, as detailed in 2U's Request for Judicial Notice.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

11

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1   Plaintiffs do not allege that 2U was ever involved in USC Rossier's data submissions
2   to US News.

3          Each US News ranking is based on different criteria, which vary from year to
4   year.  Compls. ¶ 56.  The 2023-2024 "Best Education Schools" ranking considered
5   "quality" metrics such as reputational assessments from peers (metrics that made up
6   40% of the total score); "research activity" assessing research spend (30%);
7   "selectivity data" including test scores and acceptance rates for doctoral programs
8   (18%); and "faculty resource" information like student-teacher ratios (12%).  Ex. 2
9   at 1.  The "Best Education Schools" ranking considers the "selectivity of doctoral
10  degree programs," FAC ¶ 57, not master's programs—so the master's programs 2U
11  helped support never impacted USC Rossier's selectivity for purposes of this
12  ranking.  *See* Ex. 1 at 23 n.15; Ex. 2 at 6 (explaining selectivity factor).

13         USC Rossier participated in the 2008 through 2021 editions of US News's
14  "Best Education Schools" rankings.  Compls. ¶ 58.  In the 2009 edition, US News
15  ranked USC Rossier #38.  *Id.*  US News then ranked USC Rossier #22 in the 2010
16  edition, and, in later years, #14 (2012), #17 (2013), #15 (2014), #15 (2017), #10
17  (2018), #12 (2019), #12 (2020), and #11 (2021).[3]  Compls. ¶¶ 58, 83, 99, 144.  Last
18  year, 276 schools participated in this ranking.  Ex. 2 at 2.

19         US News separately publishes a "Best Online Master's in Education" ranking
20  limited to online master's programs.  Compls. ¶¶ 57, 69.  USC Rossier participated
21  in this "specialty" ranking once, in 2013, and its online MAT program ranked #44.
22  *Id.* ¶ 69.  A total of 338 schools participated in this ranking last year.  Ex. 3 at 4.

23         **C.   USC's Counsel Investigates USC Rossier's US News Rankings**

24         In January 2022, USC discovered potential inaccuracies in USC Rossier's
25  submissions to US News, and retained Jones Day to investigate.  Ex. 1 at 1, 3.  In
26  April 2022, the firm issued a report (the "**Jones Day Report**"), concluding that

27
28
_____
[3] Plaintiffs do not allege USC Rossier's position in 2011, 2015, and 2016.

"[f]rom at least 2013 to 2021," USC failed to "report [selectivity] data on its EdD programs," instead reporting "data on only its PhD program, which made the School's doctoral programs appear to be more selective than they actually were." *Id.* at 1.  This was an intentional decision by USC's dean: "The ultimate decision-making authority and responsibility for the School's survey submissions rested with the School's dean, who reviewed and approved the submissions before they were transmitted to US News."  *Id.*  Jones Day also found that USC "did not typically include data relating to online EdD students in US News surveys," although it recognized that those surveys "did not expressly state that online programs should be included" until 2022.  *Id.* at 20.  The Jones Day Report never mentions 2U.

## III.   PROCEDURAL BACKGROUND

On December 20, 2022, Plaintiffs brought their first lawsuit, *Favell I*, against USC and 2U on behalf of themselves and other former USC Rossier online students. Plaintiffs alleged that "Defendants engaged in a two-part scheme" to (1) "submit[] inaccurate, incomplete data to US News to increase USC Rossier's Best Education Schools ranking," and (2) "use[] the[] fraudulently-procured Best Education Schools ranking to market the online degrees."  *Favell I* ECF No. 1-1 ¶ 50.  Plaintiffs originally sought equitable relief under the FAL, CLRA, and UCL.  *Id.* ¶¶ 147-66. Each claim centered on a theory that 2U and USC *knew* the rankings were false and thus had engaged in fraud.

Both Defendants moved to dismiss.  On March 28, 2023, Plaintiffs filed the FAC in *Favell I*, dropping their requests for equitable relief and asserting only a claim for damages under the CLRA.  *Favell I* ECF No. 32.  That same day, Plaintiffs filed a separate case, *Favell II*, reasserting their claims for equitable relief based on identical factual allegations.  *Favell II* ECF No. 1-1.

On July 5, 2023, this Court granted 2U's motion to dismiss *Favell I*, concluding that Plaintiffs had not plausibly pled that 2U knew the rankings were false.  In doing so, this Court explained that the FAC did not allege "that *2U was*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

13

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

involved in any way in the submission of data to US News."  Order at 12.  It also recognized that the Jones Day Report "states that 'responsibility for the School's survey submissions rested with the School's dean.'"  *Id.*  And this Court concluded that even if 2U was "responsible for much of the marketing of the online program," that would not "show the circumstances by which 2U would have come to learn of the falsity" of the rankings.  *Id.* at 13.  This Court granted Plaintiffs leave to amend in *Favell I*, and the parties stipulated that Plaintiffs could file an amended complaint in *Favell II* as well.

On July 28, 2023, Plaintiffs filed their amended complaints.  Though Plaintiffs added additional allegations, the claims remain the same: in *Favell I*, Plaintiffs seek damages for alleged CLRA violations; in *Favell II*, Plaintiffs seek equitable relief for alleged FAL, CLRA, and UCL violations.  On August 24, 2023, this Court permitted 2U to file one consolidated Motion to Dismiss addressing both complaints. *Favell I* ECF No. 75; *Favell II* ECF No. 65.

## IV.  LEGAL STANDARDS

Courts must dismiss claims under Rule 12(b)(6) where plaintiffs fail to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In assessing whether that standard is satisfied, courts cannot accept as true "unwarranted deductions of fact" or "unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to establish a plausible basis for relief.  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 540 U.S. 544, 557 (2007)).

Where, as here, claims are based on purported misrepresentations, Rule 9(b)'s particularity requirement also applies.  *See, e.g.*, *Lorenz v. Sauer*, 807 F.2d 1509, 1511-12 (9th Cir. 1987); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (applying Rule 9(b) to misrepresentation-based CLRA and UCL claims).

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

14

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

Rule 9(b) requires that plaintiffs identify with specificity "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation omitted).

## V.    ARGUMENT

All of Plaintiffs' claims against 2U are fatally deficient. Their claims under the FAL, CLRA, and the "unlawful" prong of the UCL fail for three independent reasons: Plaintiffs do not plead (1) an actionable misstatement; (2) reliance on a statement by 2U; or (3) that 2U knew or should have known the rankings were false.[4] Plaintiffs' CLRA claim also fails because they have not pled the additional, express requirements of the CLRA subsections they invoke. And Plaintiffs' claim under the "unfair" prong of the UCL fails because the allegedly "unfair" business practice—2U's tuition-sharing arrangement with USC—has been expressly permitted by federal law and the U.S. Department of Education for decades and thus cannot serve as a basis for relief under the UCL.

### A.    Plaintiffs Have Not Pled An Actionable Misstatement By 2U

Plaintiffs must allege an actionable misstatement to plead each of their claims. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018). They assert two categories of misrepresentations appearing in USC advertisements: (1) statements that USC Rossier was "top-ranked," *see, e.g.*, Compls. ¶¶ 80, 88(c), 91; and (2) statements that indicated the numerical US News ranking USC Rossier held at the time of the advertising, *see, e.g., id.* ¶¶ 83-88(a).[5] Neither supports a claim.

---

[4] In *Favell II*, Plaintiffs claim that 2U is liable under the UCL's "unlawful" prong for violating the FAL and CLRA. FAC ¶ 185. This claim accordingly rises or falls with Plaintiffs' "predicate" FAL and CLRA claims. *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015).

[5] Plaintiffs previously disclaimed an intention to hold 2U liable for "statements that simply refer to USC Rossier as 'top-ranked.'" *Favell I* ECF No. 51 ("**2U Opp.**"), at 19 n.9. Nonetheless, Plaintiffs left allegations referring to such statements in their complaints. This Court did not consider whether such statements are actionable in its Order.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1       1.      The "Top-Ranked" Statements Are Nonactionable Puffery

2       Statements that USC Rossier was "top-ranked"—without reference to any

3   objective basis for that claim—are nonactionable "puffery." *Edmundson v. Proctor*

4   *& Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013).  To be actionable, a statement

5   must communicate a "specific factual assertion" capable of being proven false.

6   *Anunziato                 v.                eMachines,                Inc.*,

7    402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005); *see Newcal Indus., Inc. v. Ikon Office*

8   *Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (similar).  Advertising that "merely states

9   in general terms that one product is superior" is nonactionable because "consumer

10  reliance" is induced by "specific rather than general assertions." *Viggiano v. Hansen*

11  *Nat. Corp.*, 944 F. Supp. 2d 877, 894-95 (C.D. Cal. 2013).

12      Here, statements that USC Rossier was "top-ranked" say nothing about the

13  school's "specific characteristics," and are too general to be actionable.  *Elias v.*

14  *Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012).  Because these

15  statements make "no reference to the category in which [USC Rossier]" is "top-

16  ranked," they are impossible to verify and therefore are "classic puffery."   *In re*

17  *Century 21-RE/MAX Real Est. Advert. Claims Litig.*, 882 F. Supp. 915, 928 (C.D.

18  Cal. 1994).  In addition, all of these "top-ranked" statements were *literally true*—

19  ranking organizations other than US News ranked USC Rossier's programs highly

20  throughout the relevant time period, and there are no allegations that USC misled

21  any of them.  *See, e.g.*, Ex. 7 at 1 (ranking USC Rossier's online MAT program #1

22  in 2013); Ex. 8 at 4 (ranking USC #23 of schools worldwide offering education

23  degrees in 2018); Ex. 9 at 5 (ranking USC Rossier's online master's programs #4 in

24  2019); Ex. 10 at 16 (ranking USC Rossier's EdD programs #3 in 2020).

25      Moreover, even if this advertising had identified US News as the ranking

26  organization (which is not alleged), qualifiers such as "top" are too vague to imply

27  that USC Rossier had achieved any particular position.  Plaintiffs never identify the

28  cutoff for what they believe constitutes "top ranked."  And given that "***hundreds***"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

16

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1   of schools participate, Compls. ¶¶ 10, 50 (emphasis added), the ranking USC Rossier

2   held *before* the supposed fraud began and, according to Plaintiffs' theory, would

3   presumably have maintained even absent the fraud—#38—is a "top" ranking too.

4        The decision in *CollegeNet, Inc. v. Embark.Com, Inc.*, 230 F. Supp. 2d 1167

5   (D. Or. 2001), made these exact points when dismissing claims against a defendant

6   who helped facilitate online applications for universities.   There, the defendant

7   represented that it held a large market share of the "top United States universities."

8   *Id.* at 1177.   To prove falsity, the court explained, "one would need to know which

9   schools are 'top universities.'"   *Id.*   But that was impossible, for two reasons.  First,

10  reasonable consumers have a vastly different definition of what counts as a "top"

11  school.   To some people, "top universities" "might indicate the top ten universities

12  in the nation," while "others might consider a much larger number."   *Id.*   Second,

13  consumers have no way to know "which ranking system governs" when attempting

14  to verify this "top universities" claim because many different companies rank

15  universities. *Id.* Both of those considerations apply equally here:  The "top-ranked"

16  statements neither identify a particular metric nor explain what counts as being in

17  the "top"—and therefore are nonactionable puffery.

18       2.    <u>The US News Rankings Are Nonactionable As To 2U</u>

19       The second category of allegations concerns USC advertising that conveyed

20  USC Rossier's numerical US News ranking.   In its Order, this Court agreed that

21  under the Ninth Circuit's decision in *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107

22  (9th Cir. 2021), comparative rankings such as US News's are statements of

23  opinion—not fact. *See* Order at 7-8.  That conclusion was correct:  These rankings

24  simply represent US News's subjective opinions about how USC Rossier compares

25  to other schools.   And because these are opinion statements, they are only actionable

26  against a defendant who actually "know[s]" they were "false."  *PhotoMedex, Inc. v.*

27  *Irwin*, 601 F.3d 919, 931 (9th Cir. 2010).   Plaintiffs have deleted their allegations

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

17

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

that 2U actually knew the rankings were false, opting instead to pursue a negligence theory; accordingly, these rankings-based claims against it fail.

In its Order, this Court allowed Plaintiffs' claims against USC to proceed because Plaintiffs alleged that USC had "knowingly reported false data to US News." Order at 8. That holding cannot be extended to 2U, given Plaintiffs' failure to allege that 2U knew the data were false. In any event, Plaintiffs' claims ultimately target the allegedly false advertisements of the US News ranking, *not* the false reports of *selectivity data* by USC to US News. Plaintiffs do not claim to have seen those reports—which means they could not establish the reliance element of their claims under that latter theory in any event.

*a.     US News Rankings Are Nonactionable Opinions*

Plaintiffs' claims rest entirely on their theory that the US News rankings *themselves* were misleading and critical to their decision to attend USC Rossier. *See, e.g.*, Compls. ¶¶ 52-57 (explaining why the "rankings" themselves were "critically important" to "students in deciding where to attend"); *id.* ¶¶ 120, 125, 127, 135, 139, 148, 149, 155, 157 (plaintiffs claiming that they relied to their detriment on the "rankings"); *id.* ¶¶ 174, 175, 182, 190 (arguing that the "rankings" were "false"). But as this Court has acknowledged, the Ninth Circuit has already held that third-party rankings such as US News's are statements of opinion, not fact. Order at 6-7 (citing *Ariix*, 985 F.3d at 1121).

In *Ariix*, the Ninth Circuit concluded that "comparative" ratings of nutritional supplements were "simply statements of opinion about the relative quality of [those] products" and thus were not actionable. 985 F.3d at 1121. In doing so, it rejected Ariix's argument that the ratings were factual because they "rely on … objective criteria"—there, eighteen different "scientific criteria," *id.* at 1111—focusing instead on the fact that there was "an inherently subjective element in deciding which scientific and objective criteria to consider," *id.* at 1121. The Ninth Circuit provided an apt analogy:  "For example, publications that rank colleges or law schools

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

18

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1    purportedly rely on objective criteria (*e.g.*, acceptance rates, test scores, class size,

2    endowment), but selecting those criteria involves subjective decision-making." *Id.*

3          *Ariix*'s holding that comparative rankings are opinion statements is not an

4    outlier.  In *Aviation Charter, Inc. v. Aviation Res. Grp.*, 416 F.3d 864, 870-71 (8th

5    Cir. 2005), for example, the Eighth Circuit likewise concluded that a comparative

6    rating of the safety of air charter providers was a nonactionable opinion—even

7    though it was derived "in part on objectively verifiable data"—because it involved

8    "a subjective interpretation of multiple objective data points."  Other courts agree;

9    comparative rankings do not contain assertions of fact because they simply compare

10   one competitor or product to others using the third-party's own criteria.  *See, e.g.*,

11   *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 796-801 (N.D. Cal. 2010)

12   (comparative ranking based on mathematical formula is nonactionable opinion); *see*

13   *also Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 673-74

14   (9th Cir. 2023) (recognizing that statement comparing one product to another is not

15   actionable under *Ariix*).

16          The US News rankings are no different.  US News uses its own "subjective

17   decision-making" to slot each school into its final position, *Ariix*, 985 F.3d at 1121,

18   encompassing judgments such as the weight to give each criterium, whether to weigh

19   data from online or EdD programs in the selectivity factor, and how to interpret

20   subjective surveys from peer schools (which make up 40% of the ranking).  The final

21   result, which is the product of a complex methodology and different factors, says

22   nothing about a program's "specific characteristics."  *Elias*, 903 F. Supp. 2d at 855.

23   Instead, it simply speaks to US News's opinion on how one program stacks up

24   against others.

25          For these reasons, even if Plaintiffs had pled that 2U reproduced the ranking

26   in ads, Plaintiffs' claims still fail because that ranking is exactly the kind of

27   nonactionable opinion statement Ariix ruled out as a basis for liability.

28          b.      *Plaintiffs Do Not Allege Claims Against 2U For*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

19

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

*"Knowingly Report[ing] False Data To USC"*

Despite agreeing with Defendants that comparative rankings generally are *not* actionable, *see* Order at 7 & n.3, this Court upheld Plaintiffs' claims against USC by stating that Plaintiffs' core theory of wrongdoing turned on the fact "that [USC] knowingly reported false data to US News," not on its public dissemination of the US News rankings themselves, *id.* at 8.  In doing so, the Court appeared to recognize that—as Plaintiffs themselves had argued—a defendant can be held liable for posting a statement of opinion *if* he "lacks a good faith belief in the truth of the statement."  *Favell I* ECF No. 50 ("**USC Opp.**"), at 19 (citing *PhotoMedex, Inc.*, 601 F.3d at 931); *see also In re Countrywide Fin. Corp. Mort.-Backed Sec. Litig.*, 943 F. Supp. 2d 1035, 1055-56 (C.D. Cal. 2013) (ratings based on "allegedly false information" is actionable against defendants who "did not believe the information they provided to the rating agencies … and hence could not believe that the [] ratings were accurate when they repeated them").  The Court's holding that *USC* can potentially be held liable for the US News ranking cannot be applied here to 2U, for at least two reasons.

*First*, Plaintiffs do not allege that 2U—as distinct from USC—"*knowingly*" played any role in reporting false data to US News.  Although Plaintiffs tried to allege 2U's knowledge in their *Favell I* complaint, this Court rightly rejected those allegations, holding that Plaintiffs had failed to "provide[] sufficient facts to infer 2U's knowledge of the falsity."  Order at 12.  Indeed, the Court emphasized that the *Favell I* complaint "d[id] not specify that *2U* was involved in any way in the submission of data to US News," and that in fact the Jones Day Report "states that 'responsibility for [USC's] survey submissions rested with [USC's] dean.'"  *Id.* Plaintiffs did not provide any facts in the FAC and SAC contradicting those conclusions.  Just the opposite:  Plaintiffs *deleted* most of their (conclusory) allegations that 2U actually knew the rankings were false, opting instead to rest on a theory that 2U was negligent in *not knowing* the rankings' falsity.  *See, e.g.*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

20

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

Compls. ¶¶ 92, 97-100 (alleging that 2U should have "investigated" the rankings to "learn[] of the falsity"); FAC ¶¶ 176, 200 (alleging that USC acted "knowingly and fraudulently" while 2U acted "negligently"); SAC ¶ 177 (same).  So this Court's prior holding as to USC—which turned on USC allegedly *having knowledge* that the rankings were false, *see* Order at 8—cannot carry over to 2U.

*Second*, Plaintiffs' claims against 2U are based on 2U's allegedly false advertising of the US News ranking itself—*not* on 2U's role in "report[ing] false data to US News." *Id.*; *see* Compls. ¶¶ 76-91 (identifying the false statements as the advertising).  For Plaintiffs to state a claim based on the alleged reports of false data, they would need to establish that they actually saw and "relied" on those reports. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir. 2017); *see, e.g.*, *Phillips v. Apple Inc.*, No 15-cv-04879-LHK, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) (dismissing FAL and UCL claims for lack of reliance).  But Plaintiffs do not allege that they *ever* saw the selectivity data reported by USC to US News.  Nor do they allege that selectivity data for doctoral programs is particularly important to students choosing a graduate program, let alone that it was critical to their own decisions to apply.  If Plaintiffs' claims really do turn on the false data reports— instead of on the ultimate US News rankings—they independently fail for lack of reliance on those reports.  Either way, those claims cannot proceed against 2U.

## B.   Plaintiffs Have Not Pled Reliance On A 2U Advertisement

Plaintiffs also must plead reliance on a misrepresentation *by each defendant* to state their claims.  *See Kwan*, 854 F.3d at 1095; *see, e.g.*, *Musgrave v. Taylor Farms Pac., Inc.*, No. 18-cv-02841-JSW, 2018 WL 11033583, at *5 (N.D. Cal. Oct. 17, 2018) ("Plaintiffs must allege that [each defendant] made, adopted, or controlled representations that Plaintiffs saw or heard[.]").  This requires Plaintiffs to plead that they actually saw a statement made or "controlled by" 2U containing USC Rossier's ranking, rather than one made by USC or US News.  *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007); *Reed v. NBTY, Inc.*, No. 13-0142-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

21

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

JGB, 2014 WL 12284044, at *11 (C.D. Cal. Nov. 18, 2015) (dismissing FAL, CLRA, and UCL claims).  As before, no Plaintiff claims to have seen a single misleading statement by *2U*, which provides another reason to dismiss the claims against it.

**Iola Favell.**  Favell claims she saw USC Rossier's US News ranking in two places: the US News website, Compls. ¶ 120, and the USC Rossier homepage, *id.* ¶ 121.[6]  Plaintiffs still do not, and cannot, allege that *2U* made or controlled statements on either website.  *See, e.g.*, *Reed*, 2014 WL 12284044, at *11 (defendants "cannot be liable for the statements made on a third-party website" absent allegations they "controlled the language").  As for the USC Rossier homepage, Plaintiffs acknowledge the opposite, declaring that "USC maintained the main Rossier website, rossier.usc.edu."  Compls. ¶ 47; *see id.* ¶ 87 ("USC" displayed Rossier's ranking on the website).  Nor could they claim otherwise:  The Defendants' contract makes clear that "USC" was responsible for promoting the programs "on the Rossier website," including "the homepage."  Ex. A § 2(A).

Favell also continues to allege that "[she] informed her [application] advisor of the importance of USC Rossier's ranking in her decision to apply."  Compls. ¶ 123.  But this allegation is irrelevant to Plaintiffs' false-advertising claims.  Favell does not allege that *her advisor* made any statements on USC Rossier's ranking, or that her advisor had a duty to disclose anything about the rankings.  *See Hodsdon*, 891 F.3d at 862.

**Mariah Cummings.**  Cummings claims to have seen the ranking on the US News website, Compls. ¶ 144, and the USC Rossier homepage, *id.* ¶ 145.  These allegations fail for the same reason as Favell's.

---

[6] As before, no Plaintiff claims to have seen the rankings on the USC Rossier Online Webpages.  Allegations concerning these Webpages, *see* Compls. ¶ 88, therefore cannot state a claim against 2U.  *See, e.g.*, *Musgrave v. Taylor Farms Pac., Inc.*, No. 18-cv-02841-JSW, 2019 WL 8230850 (N.D. Cal. Feb. 20, 2019).

LATHAM&WATKINS^{LLP}
ATTORNEYS AT LAW

22

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

Unlike Favell, Cummings also alleges that she conducted a Google search that displayed a paid result "advertis[ing] USC Rossier as a top-ranked school." Compls. ¶ 146. But as explained *supra* at V.A.1, statements that USC Rossier was "top-ranked" are nonactionable puffery.

Finally, in one vague sentence, Cummings claims she saw "additional advertising about USC's Rossier ranking when browsing the internet" due to 2U's efforts to have such advertising "disseminated via a display advertising network." Compls. ¶ 147. This fails to state a claim against 2U for two reasons.

*First*, Plaintiffs must provide examples of the allegedly false advertisements they saw to plead their FAL, CLRA, and UCL claims. All misrepresentation claims are a "species of actual fraud" that must be pled with particularity under Rule 9(b). *Lorenz*, 807 F.2d at 1511-12. And Rule 9(b) requires that the plaintiff "specify" what the advertisements he saw "specifically stated," which ordinarily requires including an example. *Kearns*, 567 F.3d at 1126; *see, e.g.*, *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 945 (N.D. Cal. 2009) (plaintiffs "must provide, at minimum, the specifics regarding (including an example of) each type of allegedly false or misleading advertisement"); *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013) (dismissing FAL, CLRA, and UCL claims for failing to "identify specific advertisements" and the "exact false or misleading statements"). That is because, "[i]n determining whether a statement is misleading," the "primary evidence … is the advertising itself." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006) (citation omitted).

Despite cataloging statements USC made, *see* Compls. ¶¶ 83-87, 121, 132, 145, Plaintiffs still have not described any 2U advertising at all, let alone with particularity—much less provided an example of a 2U targeted advertisement they may have seen. But without an example, it is impossible to tell whether these advertisements contained USC Rossier's numerical ranking or simply labeled it "top

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

23

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

ranked"—which prevents this Court from determining whether the alleged representations are actionable.  *See Colgan*, 135 Cal. App. 4th at 679.

*Second*, and independently, these allegations do not show that *2U* authored or controlled the advertisements' content, such that it can be liable under a false-advertising theory.  Plaintiffs nowhere allege that 2U (rather than USC) crafted these advertisements.  And they also do not—and cannot—claim that 2U "controlled the preparation or distribution of these statements," *Reed*, 2014 WL 12284044, at *11, where the contract states that any marketing materials 2U made were "subject to *USC's* written approval prior to any use," Ex. A § 1(A) (emphasis added).

**Sue Zarnowski.**  Zarnowski claims she saw the ranking on the homepage of USC Rossier's website, Compls. ¶ 132, and that she told her admissions adviser that USC Rossier's ranking mattered to her, *id.* ¶ 136.  These allegations fail for the same reasons as Favell's.

Zarnowski also alleges that she "conduct[ed] Google searches for top EdD programs, and the paid search results displayed USC Rossier." *Id.* ¶ 130.  She does not allege that the resulting advertisements actually said that USC Rossier was a "top EdD program[]," but even if they did, that would be puffery.  *See supra* at V.A.1.  Confirming the point that no consumer would reasonably rely on puffery, Zarnowski herself "performed additional research" to verify USC Rossier's US News ranking after seeing this search result.  Compls. ¶ 130.

Finally, Zarnowski claims that she received paid search advertisements promoting the ranking and claiming the school was "top ranked." *Id.* ¶¶ 131, 133.  These allegations fail for the same reasons as Cummings', including because Plaintiffs did not provide an example of these targeted advertisements.

**Ahmad Murtada.**  Murtada claims to have seen an advertisement "for USC Rossier's online EdD program offerings on LinkedIn." *Id.* ¶ 152.  Merely advertising a program on LinkedIn is not unlawful, and Murtada does not allege that this advertisement contained any misrepresentations.  He instead claims that he then

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

24

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

visited the USC Rossier homepage and saw the US News ranking *there*. *Id.* ¶ 153. 2U did not make those statements, so these allegations fail.

Murtada also alleges that his admissions counselor told him USC Rossier was a "top-ranked program." *Id.* ¶ 154. But as discussed, labeling USC Rossier "top-ranked" is puffery.

### C.  Plaintiffs Have Not Pled That 2U Knew Or Should Have Known The Rankings Were False

Plaintiffs' claims independently fail because Plaintiffs have not pled that 2U knew or should have known that the rankings were fraudulently procured.

#### 1.  Plaintiffs Fail To Plead Actual Knowledge

Binding Ninth Circuit precedent establishes that the CLRA contains an actual knowledge requirement. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-46 (9th Cir. 2012) (CLRA and UCL require "knowledge of a defect"); *see also Tomek v. Apple*, 636 F. App'x 712, 713 (9th Cir. 2016) (citing *Wilson* in holding that the CLRA and UCL require that the defendant "knew it was issuing misleading advertisements"); *Nolan v. Ford*, No. E073850, 2022 WL 1513308, at *27 (Cal. Ct. App. May 13, 2022) (citing *Wilson* in holding that the CLRA requires a "knowingly false" representation); *but see* Order at 11 (indicating that actual knowledge is not required, but without discussing *Wilson*, *Tomek*, or *Nolan*). Plaintiffs have not pled a single fact from which to infer that 2U actually knew that the rankings were false—where 2U did not participate in USC Rossier's US News ranking process or see USC's survey submissions. *See supra* at II.B-C; *see, e.g.*, *Shu v. Toyota Motor Sales USA, Inc.*, No. 3:22-cv-04661-LB, 2023 WL 3028071, at *9-10, 11 (N.D. Cal. Apr. 19, 2023) (dismissing CLRA and UCL claims for failing to plead actual knowledge).

#### 2.  Plaintiffs Fail To Plead Negligence

Even if binding Ninth Circuit precedent did not require allegations of actual knowledge, Plaintiffs' CLRA claims still would fail because they have not pled facts showing that 2U had a duty to investigate the rankings *and* that it should have known

they were false—as they must.  *See Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) (dismissing CLRA and UCL claims for failing to plead negligence).  That deficiency is also fatal to Plaintiffs' FAL and UCL claims, which likewise require a duty to investigate and that 2U knew or should have known, through "the exercise of reasonable care," the rankings' falsity.  Cal. Bus. & Prof. Code § 17500; *see, e.g.*, *Williams v. Tesla, Inc.*, No 20-cv-08208-HSG, 2023 WL 1072000, at *3-5 & n.6 (N.D. Cal. Jan. 27, 2023) (dismissing FAL, CLRA, and UCL claims for failing to plead that defendant knew "or should have known" of falsity).

At the outset, Plaintiffs have failed to plead negligence for any of their claims because, under California law, "[t]here is no duty to investigate the truth of statements made by others."  *Perfect 10, Inc.*, 494 F.3d at 808 (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 964 (2002)).  Again, the statements Plaintiffs saw were made or controlled by USC—not 2U.  2U therefore was under no obligation to investigate USC Rossier's US News rankings.

Even if Plaintiffs had pled advertisements by 2U, Plaintiffs still would not have adequately pled negligence.  To plead a "should have known" theory, Plaintiffs must establish both that (1) 2U was aware of facts that "would put a reasonable person on notice of possible misrepresentations," and (2) it was possible for 2U to verify the false advertising.  *People v. Forest E. Olson, Inc.*, 137 Cal. App. 3d 137, 139 (Cal. Ct. App. 1982); *see POM Wonderful LLC v. Purely Juice, Inc.*, 362 F. App'x 577, 580 (9th Cir. 2009) (similar).  Plaintiffs posit five theories for why 2U "should have known" the rankings were false:  (1) 2U's industry-specific knowledge as an "education company," Compls. ¶ 94; (2) the Defendants' contract delegating marketing responsibilities to 2U, *id*. at ¶¶ 95-97; (3) the "rapid expansion" of student enrollment in USC Rossier's online degree programs, *id.* at ¶ 98; (4) USC Rossier's position in the 2013 Best Online Master's in Education ranking, *id.* at ¶ 99; and (5) the Department of Education's alleged concerns over incentive compensation, *id.* ¶ 100.  But none of these allegations includes a single asserted ***fact*** that 2U was

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

26

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

aware of that would have put a reasonable person on notice of fraud, let alone a fact that 2U could verify when USC (the alleged fraudster) held the information needed to verify the rankings. Plaintiffs' theories lack sufficient "factual enhancement" to cross the line between "possibility and plausibility" and therefore fail even under Rule 8's pleading standards. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96, 1000 (9th Cir. 2014).

*First*, Plaintiffs speculate that because "2U is an education company that has long worked with a variety of colleges," it must have had access to "admissions data and practices" for other schools and therefore "had access to information, resources, and best practices with respect to US News reporting and advertising." Compls. ¶ 94. The last step does not follow. Plaintiffs do not allege that 2U was involved with the US News rankings process for any other school. And even assuming that 2U had access to information related to US News's "best practices" (a term Plaintiffs never define), that would not give 2U reason to doubt USC was *following* those practices. Conclusory (and unsupported) allegations concerning 2U's general familiarity with rankings do not support a reasonable inference that 2U was on notice that USC's rankings were false. *See Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 909-10 (E.D. Cal. 2018) (dismissing "generic" and "non-specific" allegations that defendant "obtained notice" of a defect).

*Second*, Plaintiffs allege that because USC was contractually required to provide 2U with "information pertaining to both classroom-based and online students' admissions" related to USC's MAT program, Compls. ¶ 95(b) (quoting Ex. A § 2G), 2U must have "received USC Rossier's actual admittance data" for all of its programs, and should have "compare[d]" that data with "the student selectivity data reported by USC Rossier and published by US News" to discover fraud, *id.* Setting aside that Plaintiffs mischaracterize the contractual language—which is plucked out of context from the "course development" section of the MAT program contract and simply allowed USC to provide 2U with unspecified "information

pertaining to" USC Rossier's general "admissions" standards for master's programs—2U's potential access to certain limited data is too thin a reed to rest this theory on. Plaintiffs offer no *facts* to support their theory that USC provided 2U with the selectivity data for every USC program that fed its overall Best Education Schools ranking. Plaintiffs' speculation does not show that liability is "plausible on its face." *Twombly*, 550 U.S. at 570.

This theory is especially implausible given the timing and limited nature of 2U's involvement with USC Rossier. USC Rossier offers five total doctoral programs impacting the selectivity score of its ranking, including a PhD program and three EdD programs that 2U *never* helped support. Exs. 4, 6. The MAT and three other master's programs 2U helps support never impacted the selectivity score of the Best Education Schools ranking. And 2U did not become involved with the one online EdD program it helps support until *2015*—years after Plaintiffs say USC's fraud started. *See* Compls. ¶¶ 4, 52, 58 (claiming fraud began with 2010 rankings using data gathered in fall 2008).[7] Plaintiffs offer pure speculation to support their suggestion that 2U nevertheless could access the selectivity data for *all* of USC Rossier's doctoral programs since 2008. *See, e.g.*, *Alert Enter., Inc. v. Rana*, No. 22-cv-06646-JSC, 2023 WL 2541353, at *4 (N.D. Cal. Mar. 16, 2023) (plaintiff's "suspicion" that defendant "received confidential information" insufficient to "support[] a plausible inference" that it did).

In any event, even if Plaintiffs had plausibly alleged that 2U could access more than just a small subset of selectivity data, it does not follow that a discrepancy between the *full* set of data and what US News posted would put 2U on notice that the rankings were the "product of USC's fraud." Compls. ¶ 93. As Plaintiffs concede, the process by which US News ranks institutions is far from clear—even from the perspective of *participating schools* who, unlike 2U, have access to the US

---

[7] At minimum, this Court should dismiss all pre-2015 allegations against 2U.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

28

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

News surveys.  *Id.* ¶ 54 ("US News receives several phone calls per week from university administrators who ask 'why they rank the way they do.'").  Plaintiffs do not allege that 2U had access to the US News surveys such that it could understand *which* selectivity data was relevant to the overall ranking.  Nor do they allege that 2U had access to any communications between USC and US News discussing the proper data.  That means 2U had no way to assess whether USC was submitting complete data.

*Third*, Plaintiffs allege that 2U should have been "alerted" to USC's misreporting because "USC Rossier remained in the top 20 schools" despite an "obvious increase in student enrollment and decline in student selectivity." *Id.* ¶ 98. But selectivity is just one of four factors that US News considers, making up only 18% of the ranking.  *See id.* ¶ 56.  Plaintiffs do not allege that 2U had access to the other data USC submitted for the *non*-selectivity factors—which may have improved.  This theory also does not work because Plaintiffs do not allege that 2U had access to *other* participating schools' submissions, such that 2U could determine that USC's rank was inflated in comparison.  And Plaintiffs concede that the number of online programs has skyrocketed since 2009, *id.* ¶ 5, so other schools' expanded enrollment logically could have accounted for the relative stability in USC Rossier's ranking.

*Fourth*, Plaintiffs say that 2U "should have suspected" the Best Education Schools ranking was inflated after US News ranked USC Rossier #44 in the 2013 version of the Best Online Master's in Education ranking.  *Id.* ¶ 99.  But this theory falls apart upon even cursory inspection.  For one thing, as mentioned, the Best Education Schools ranking and the Best Online Master's in Education ranking measure different things: the first measures a school's "overall graduate education offerings," while the second covers only online master's degrees.  *Id.* ¶¶ 56-57, 69. And as Plaintiffs acknowledge, the selectivity of the MAT program—the only program 2U helped support in 2013—was not even a factor in the overall, doctoral-

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

29

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1    based ranking.  *Id.* ¶ 116.  Moreover, if this theory were enough to put someone on

2    notice of fraud, then US News certainly was on notice too.

3         In any event, Plaintiffs never explain why a single program's #44 spot out of

4    *hundreds* of participating schools would be considered so low as to put 2U on notice

5    of fraud.  And Plaintiffs do not claim that the number of schools participating in the

6    online ranking was the same as or less than the number of schools participating in

7    the doctoral-based ranking—making it impossible to tell whether this #44 spot was

8    actually comparatively lower than USC Rossier's #17 position in a different ranking

9    that could have included fewer schools.  Last year, for example, more schools

10   participated in the Best Online Master's in Education ranking than in the doctoral-

11   based ranking.  *Compare* Ex. 3 at 4 (338 in online), *with* Ex. 2 at 2 (276 in overall).

12   If those numbers were the same in 2013, then *both* USC Rossier's #17 spot in the

13   overall ranking *and* its #44 spot in the online ranking would have put it in the *top*

14   *15%* of participating schools.  Plaintiffs ultimately have no factual support for their

15   theory that 2U was on notice of fraud.  *See, e.g.*, *Iqbal*, 556 U.S. at 678.[8]

16        *Fifth*, Plaintiffs allege that "2U is well-aware of the Department of

17   Education's" purported "concerns over the way in which incentive compensation

18   has historically led to fraud."  Compls. ¶¶ 25, 100.  From this, they posit that 2U's

19   alleged knowledge of the "risk of fraud inherent in its arrangement with USC, and

20   the fact that it was profiting from taxpayer money, should have prompted 2U to

21   investigate or inquire further into claims that it was making to students."  *Id.* ¶ 100.

22   That makes no sense.  As discussed *infra* at V.E, tuition-sharing arrangements like

23   2U's have been *blessed by* the Department of Education for decades.  And Plaintiffs

24   have not alleged a single "specific fact[]" to support their claims of widespread

25   fraud.  *Eclectic Props.*, 751 F.3d at 999.  But even if Plaintiffs' legal argument about

26   _____

27   [8] This theory also ignores that other sources gave Rossier's online MAT program
     high rankings in 2013—some as high as #1—making it even more implausible that
28   the US News ranking would put 2U on notice of fraud.  *See, e.g.*, Ex. 7 at 1 (ranking
     Rossier's online MAT program #1).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

30

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

the Higher Education Act ("**HEA**") were correct, it would provide no basis for inferring that 2U should have known that USC's submissions to US News were fraudulent.  If taken seriously, Plaintiffs' theory means that 2U must be considered on notice and therefore liable for fraudulent acts by any of its partner schools, regardless of whether it had any knowledge or even ability to know about such acts—opening it up to unbounded liability.  That is not the law.  *See Emery*, 95 Cal. App. 4th at 960 (no vicarious liability for false-advertising claims).

Beyond all this, Plaintiffs also have not alleged any facts to explain how 2U could have verified the rankings, given that only USC held all the information needed to confirm their accuracy and, by Plaintiffs' telling, was motivated to hide that information from others.  Compls. ¶¶ 9, 75.  Plaintiffs allege that USC—not 2U—knew the rankings were false.  *See supra* at V.A.2.  But Plaintiffs do not allege any facts to allow this Court to infer that, had 2U investigated, USC would have admitted that it was manipulating the selectivity data it sent to US News—instead of defending its actions as consistent with US News surveys and correspondence 2U could not access.  Nor do Plaintiffs allege that 2U could have verified USC's submissions with US News itself.  All of this makes Plaintiffs' case fundamentally different than cases where courts have held that a defendant "should have known" statements were false; in those cases, the allegedly false advertising related to facts the defendant *could verify*.  *See, e.g.*, *Forest E. Olson*, 137 Cal. App. 3d at 139 (corporation could and should have verified advertisements where "the information relied upon and the sources of verification [we]re both within the corporation disseminating the misleading advertising"); *Khan v. Med. Bd.*, 12 Cal. App. 4th 1834, 1846 (1993) (similar); *Park v. Cytodyne Techs., Inc.*, No. GIC 768364, 2003 WL 21283814, at *7 (Cal. Super. Ct. May 30, 2003) (defendant should have verified advertising where needed information "was within the control of defendant").  Imposing liability on 2U for failing to verify USC Rossier's rankings would run afoul of the general principle that the law does not impose duties that are impossible

LATHAM&WATKINS™
ATTORNEYS AT LAW

31

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

to satisfy.  *See, e.g.*, *San Diego Hospice v. Cnty. of San Diego*, 31 Cal. App. 4th 1048, 1055-56 (1995) (dismissing fraudulent-omission claim because court was "unwilling" to impose a duty to disclose that the party "cannot possibly satisfy").

### D.    Plaintiffs' CLRA Claim Fails For Additional Reasons

Plaintiffs' CLRA claim separately fails because Plaintiffs have not plausibly alleged a violation of the five CLRA subsections they invoke.

*Section 1770(a)(1).*  Plaintiffs allege that 2U violated Section 1770(a)(1), which prohibits "[p]assing off goods or services as those of another," by "represent[ing] that the online graduate degree programs were highly ranked."  FAC ¶ 199(a); SAC ¶ 176(a).  Under the CLRA, "[p]assing off" goods as those of another refers to "the wrongful exploitation of trade names and common law trademarks," or the sale of "confusingly similar products, by which a person exploits a competitor's reputation in the market."  *Perkins v. Philips Oral Health Care, Inc.*, No. 12-cv-1414-H, 2012 WL 12848176, at *6 (S.D. Cal. Dec. 7, 2012) (citing *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992)).  But Plaintiffs do not allege that 2U attempted to exploit a competitor's trade name or reputation.

*Sections 1770(a)(2).* Section 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services."  Plaintiffs argue that "USC and 2U represented that the online graduate degree programs had been given a high rank by US News, reflecting an approval or certification that the degree programs did not have."  FAC ¶ 199(b); SAC ¶ 176(b).  But Plaintiffs do not explain how US News rankings constitute a "certification"—which ordinarily refers to "an official document stating that a specified standard has been satisfied," Certification, *Black's Law Dictionary* (11th ed. 2019)—or an "approval"—which refers to a "formal sanction" or "confirm[ation]," Approve, *Black's Law Dictionary*, *supra*.  US News rankings neither confirm nor certify that any standard has been satisfied; they are merely comparative.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW

32

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1    ***Section 1770(a)(3).*** Section 1770(a)(3) prohibits "[m]isrepresenting the
2    affiliation, connection, or association with" another.  Plaintiffs say that "USC and
3    2U represented that the online graduate degree programs had an affiliation,
4    connection, or association with US News's highly ranked programs when they did
5    not." FAC ¶ 199(c); SAC ¶ 176(c).  But Plaintiffs nowhere explain *with whom* USC
6    Rossier appeared to be connected, because they do not allege that there is a number
7    above which US News considers a program "highly ranked."  Nor do they explain
8    why it was false to associate USC Rossier with "highly ranked" programs—when it
9    held the #38 position out of *hundreds* of schools before the alleged fraud began.

10   ***Sections 1770(a)(5) and (a)(7).***   Finally, Plaintiffs argue that Defendants
11   falsely represented that the online programs have US News's "approval" or the
12   "characteristics" of highly ranked programs, FAC ¶ 199(d); SAC 176(d) (citing
13   Section 1770(a)(5)), or that they have the "standard, grade or style" of highly ranked
14   schools, FAC ¶ 199(e); SAC ¶ 176(e) (citing Section 1770(a)(7)).  But US News
15   does not "approve" anything.  And Plaintiffs' "characteristics" and "standards"-
16   based theory conflicts with the education malpractice doctrine, which prohibits
17   claims that "require the Court to make judgments about the quality and value of" an
18   education.  *Lindner v. Occidental Coll.*, No. 20-8481-JFW, 2020 WL 7350212, at
19   *7 (C.D. Cal. Dec. 11, 2020).  Plaintiffs assured this Court in earlier briefing that
20   their claims would "*not* require the Court to wade into the quality of the education
21   Defendants provided," USC Opp. at 2 (emphasis added), and on that basis this Court
22   allowed their claims to proceed against USC, *see* Order at 11 (noting that Plaintiffs
23   do not challenge "the quality of the education they received").  But evaluating
24   whether USC Rossier had particular characteristics or met particular standards *would*
25   require the Court to evaluate the quality of a USC Rossier education, so this theory
26   conflicts with Plaintiffs' earlier representations and violates the education
27   malpractice doctrine.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

33

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

### E.   Plaintiffs Fail To Plausibly Allege An "Unfair" Business Practice By 2U That Violates The UCL

Plaintiffs now claim for the first time that 2U engaged in an "unfair" business practice by contracting with USC to provide a bundle of services—including recruiting services—in exchange for compensation from a percentage of tuition revenue. FAC ¶¶ 186-92. They insinuate that 2U's contract violates federal law—namely 20 U.S.C. § 1094(a)(20), the section of the HEA that bans "incentive payment" based on "securing enrollments." This theory is baseless. As the Department of Education has repeatedly explained in a series of regulatory actions spanning two decades, the HEA permits revenue-sharing agreements in which companies like 2U provide a range of bundled services to universities like USC. Those regulatory actions foreclose Plaintiffs' UCL unfairness claim as a matter of law. And 2U's reliance on this longstanding interpretation establishes that 2U's contract was not unfair. Moreover, because the terms of 2U's contract with USC did not harm Plaintiffs, they lack statutory standing to make this argument.

Plaintiffs' argument fails at the threshold because the law "clearly permit[s]" agreements like 2U's. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1164-66, 1171 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc., v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182-83 (1999)). Where the government has permitted certain conduct, courts may not use the UCL to override that determination. *Id.* at 1164-67 (holding that a regulatory "safe harbor" preempted UCL unfairness claims). Here, two decades of Department of Education regulation and guidance provide such authorization. This guidance makes clear that the HEA permits tuition-sharing arrangements with third parties who provide "a variety of bundled services," such as "marketing," "course support for online delivery of courses," and "recruiting"—*i.e.*, the terms of 2U and USC's contract. *See* Dear Colleague Letter: Implementation of

1   Program Integrity Regulations, GEN-11-05 at 10-12, U.S. Dep't of Educ. (Mar. 17,

2   2011) ("DCL")[9]; Ex. A at 1-2.

3           More specifically, between July 2003 and July 2011, an express regulatory

4   safe harbor confirmed the Department's longstanding view that "tuition sharing

5   arrangements" for delivery of "various service[s]" are fully consistent with the HEA,

6   even if they include "recruiting or admission activities."   34 C.F.R.

7   § 668.14(b)(22)(ii)(L) (2010).   Where a "regulation" permits the defendant's

8   conduct, that conduct "cannot be unfair" as a matter of law. *Davis*, 691 F.3d at 1165-

9   66; *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 556-57 (9th Cir.

10  2010) (same).

11          In 2011, the Department repealed the regulation as part of a broader overhaul

12  to address concerns regarding the administration of student-aid programs under the

13  HEA. *See* 75 FR 34,806, 34,808 (2010).   But almost immediately afterwards, the

14  Department issued formal guidance reaffirming its longstanding view that tuition-

15  sharing arrangements for "bundled services" do not violate the HEA or the

16  Department's implementing regulations, where "recruitment" is included with other

17  services like "marketing" and "course support for online delivery of courses." DCL

18  at 12.  This DCL, which is the Department's official interpretation of the HEA and

19  its governing regulations, *see* DCL at 1, confirms—again—that 2U's contract is

20  fully lawful.   *See Reid v. Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015)

21  (giving *Auer* deference to the agency's "interpretation of its own rules, even if the

22  product of an informal and non-final process").   It thus shows that Plaintiffs'

23  "unfairness" argument continues to be preempted by federal law. *See, e.g.*, *Webb v.

24  Smart Document Sols., LLC*, 499 F.3d 1078, 1082-86 (9th Cir. 2007) (affirming

25  dismissal of UCL claim based on agency's commentary on regulations, and

26  recognizing that conduct "cannot be 'unfair'" if the federal "agency responsible for

27

28  [9]   Available at   https://fsapartners.ed.gov/sites/default/files/attachments/dpc
     letters/GEN1105.pdf.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

35

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

implementing" a statute and its regulations has permitted it); *Perez v. Kroger Co.*, 336 F. Supp. 3d 1137, 1144-46 (C.D. Cal. 2018) (dismissing UCL claim in deference to agency's interpretation of regulations).

Plaintiffs' UCL unfairness claim additionally fails because it would violate due process for a court to impose liability on 2U for violating the HEA and its regulations despite the Department's express authorization of 2U's conduct. Defendants who conducted their affairs according to agency guidance permitting certain conduct cannot then be subjected to a different retrospective standard. *See PHH Corp. v. CFPB*, 839 F.3d 1, 44-47 (D.C. Cir. 2016) (Kavanaugh, J.), *vacated in part by* 881 F.3d 75 (D.C. Cir. 2018) (en banc), *abrogated on other grounds by Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020).[10] For Plaintiffs to succeed on their UCL claim, this Court would have to hold that the HEA and its implementing regulations forbade what the DCL expressly permitted, and then impose retrospective liability on 2U for relying on the Department's guidance. Punishing 2U "for actions [it] took in reliance on the government's assurances" regarding its contractual arrangement with USC would amount "to a serious due process violation." *Id.* at 48.

Plaintiffs concede that the DCL covers 2U's contract, yet ask this Court to replace the judgment of the Department—the federal agency tasked with interpreting and enforcing the HEA—with that of its own. FAC ¶¶ 30, 190. But courts may not "simply impose their own notions of the day as to what is fair or unfair." *Cel-Tech*, 20 Cal.4th at 182. 2U's contractual arrangement is clearly permitted by the HEA's implementing regulations and therefore cannot be "unfair" under the UCL.[11]

---

[10] The panel's due-process holding remains binding in the D.C. Circuit. The only point of disagreement between the en banc court and the panel was whether the agency's structure violated the Constitution. *See, e.g.*, 881 F.3d at 84 (en banc court praising the panel's due-process holding as "protect[ing] individual liberty when government overreaches").

[11] Plaintiffs suggest that the contract violates the DCL by not setting a limit on the number of students 2U could recruit. FAC ¶ 35. But Plaintiffs elsewhere concede

1    Moreover, even if 2U's contract with USC was not clearly permitted by law,

2    Plaintiffs do not adequately plead the "unfair" nature of 2U's bundled services

3    contract with USC.  A business practice is "unfair" if it "offends an established

4    public policy or when the practice is immoral, unethical, oppressive, unscrupulous

5    or substantially injurious to consumers."  *Podolsky v. First Healthcare Corp.*, 50

6    Cal. App. 4th 632, 647 (1996) (citation omitted).  Plaintiffs' core theory is that 2U's

7    tuition-sharing arrangement "runs afoul of long standing public policy against the

8    intermingling of financial motivators with recruitment," FAC ¶ 190, vaguely

9    gesturing at the HEA.  But as noted, two decades of regulations and authoritative

10   guidance tell the opposite story:  Bundled services agreements like 2U's are entirely

11   *consistent with* the HEA and public policy.  *See Gregory v. Albertson's, Inc.*, 104

12   Cal. App. 4th 845, 855 (2002) (declining to re-balance legislature's policy

13   preferences when dismissing UCL claim); *see supra*.  And 2U and other institutions

14   have "justifiably relied on this federal guidance," *Davis*, 691 F.3d at 1170-71, to

15   enter into long-term agreements that enable the delivery of online instruction, which

16   has increased students' access to online education.  Such reliance forecloses an

17   argument that 2U's contract is immoral, unethical, or unfair.  *See, e.g.*, *id.*

18   (dismissing unfairness claim where there was a "strong justification" for conduct);

19   *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 663 (1998) (practice

20   that benefits consumers is not "unfair").

21   Lastly, Plaintiffs' "unfair" claim fails because Plaintiffs do not allege any

22   causal connection between the bundled services arrangement and their claimed

23   losses, which means they lack statutory standing.  *See Kwikset Corp. v. Superior Ct.*,

24   51 Cal. 4th 310, 324 (2011).  Plaintiffs' claimed injury is that they "paid a price

25   premium" because of the allegedly deceptive advertisements reposting USC's

26   ranking.  FAC ¶ 193.  But nowhere do Plaintiffs explain how the allegedly unfair

27   ────────────────

28   that the contract left USC with final authority to decide who was accepted.  *Id.* ¶ 36.
     This is fully consistent with the DCL.  *See* DCL at 11 (no violation when "the
     institution determines" enrollment).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

37

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

*contract terms* concerning 2U's compensation caused them to encounter those advertisements.  If, for example, USC paid 2U a fixed price for its recruitment efforts, nothing suggests this would have kept Plaintiffs from relying on *USC's* own advertisements or the allegedly inflated rankings.  *See Daro v. Superior Ct.*, 151 Cal. App. 4th 1079, 1098-99 (2007) (no causation where plaintiffs would suffer "the same harm whether or not a defendant complied with the law").  Simply asserting some "factual nexus causation between a defendant's conduct and the plaintiff's injury" cannot "support a UCL claim." *Letizia v. Facebook, Inc.*, 267 F. Supp. 3d 1235, 1243 (N.D. Cal. 2017).

## VI.    CONCLUSION

For the foregoing reasons, and because Plaintiffs already have amended at least once in each case, underscoring that key defects cannot be cured by amendment, 2U respectfully seeks dismissal of Plaintiffs' complaints with prejudice.

Dated:  August 31, 2023                         Respectfully submitted,

LATHAM & WATKINS LLP
Elizabeth L. Deeley
Melanie M. Blunschi
Roman Martinez


By   /s/ *Melanie M. Blunschi*
Melanie M. Blunschi
*Attorneys for Defendant 2U, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

38

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**CERTIFICATE OF COMPLIANCE**</u>

The undersigned, counsel of record for Defendant 2U, Inc. ("2U"), certifies that this brief contains 9,995 words, which complies with the word limit set in the Court's August 24, 2023 Orders.  *See Favell I* ECF No. 75, *Favell II* ECF No. 65.

Dated:  August 31, 2023              /s/ *Melanie M. Blunschi*
                                                 Melanie M. Blunschi

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

39

2U, INC.'s NOTICE OF MOT. AND MOT. TO
DISMISS COMPLS.
Case No. 2:23-cv-00846-GW(MARx);
Case No. 2:23-cv-03389-GW(MARx)