# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
# [FOR PUBLIC VIEW]
## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 23-3389-GW-MARx | Date | May 13, 2025 |
| Title | *Iola Favell et al v. University of Southern California, et al.* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  
None Present

Attorneys Present for Defendants:  
None Present

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [176; U/S 181]

Attached hereto is the Court's Tentative Ruling on Plaintiffs' Motion [176] set for hearing on May 15, 2025 at 8:30 a.m.

: 

Initials of Preparer JG

***Iola Favell et al. v. University of Southern California et al.***; Case No. 2:23-cv-00846-GW-(MARx); ***Iola Favell et al. v. University of Southern California et al.***; Case No. 2:23-cv-03389-GW-(MARx); Tentative Ruling on Motion for Class Certification

Before the Court is Plaintiffs' Motion for Class Certification (the "Motion"). *See* Motion, *Iola Favell et al. v. University of Southern California et al.*, Case No. 2:23-cv-00846-GW-(MARx) (C.D. Cal.) ("*Favell I*"), Docket No. 181; *Iola Favell et al. v. University of Southern California et al.*, Case No. 2:23-cv-03389-GW-(MARx) (C.D. Cal.) ("*Favell II*"), Docket No. 166. Because identical versions of the instant Motion were filed in both of the cases regarding this matter, the Court issues this combined ruling for both *Favell I* and *Favell II*.[1] The Court has considered the Motion, Defendant University of Southern California's Opposition brief ("Opp.," Docket No. 183), and Plaintiffs' Reply brief ("Reply," Docket No. 185). For the reasons stated herein, the Court would **GRANT** the Motion.

I.  **Background**

The Court presumes that the parties are familiar with the factual and procedural history of these consolidated cases, which have been detailed in previous rulings. *See* Docket Nos. 63, 101, 173. The Court notes, too, that the parties filed an extensive collection of evidence and supporting declarations with their respective briefing on the instant Motion. The Court has reviewed these additional submissions and will detail in the discussion section any new developments germane to deciding the class certification question now before the Court.

By way of some general background, Plaintiffs Iola Favell, Sue Zarnowski, Mariah Cummings, and Ahmad Murtada ("Plaintiffs") allege that Defendant University of Southern California ("USC") engaged in a scheme to artificially inflate the U.S. News & World Report ("US News") ranking of USC's Rossier School of Education ("USC Rossier") by submitting incomplete data to US News – and then marketed that fraudulent ranking to the public. *See generally* Second Amended Complaint ("SAC"), *Favell I*, Docket No. 67; First Amended Complaint, *Favell II*, Docket No. 58.[2]

USC is a private nonprofit university that offers undergraduate and graduate degree

---

[1] Because of the similarities between filings in both cases, unless otherwise noted, all record citations will hereinafter refer to the docket in *Favell I*.

[2] Because the factual allegations (the first 171 paragraphs) in the SAC in *Favel I* and FAC in *Favel II* are identical, the Court will hereinafter cite to the SAC in *Favel I* for simplicity.

1

programs, including through USC Rossier. SAC ¶ 23. US News calculates its annual Best Education Schools rankings using data sent by graduate education schools who choose to participate in the rankings. *Id.* ¶ 55. US News develops and provides instructions to participating institutions to ensure that they consistently collect and report data. *Id*. To determine its rankings, US News employs a specific methodology which assigns weights to eleven criteria based on their perceived importance to determining academic quality. *Id.* ¶ 56. Relevant here, "student selectivity" accounts for 18% of the school's total score and is comprised of three objective sources of admittance data: (1) the school's doctoral acceptance rate (6%); (2) mean GRE quantitative scores (6%); and (3) mean GRE verbal scores (6%). *Id.* US News rankings also favor low faculty-student ratios and high research spending. *See* Motion at 3; Motion, Ex. 16, Docket No. 181-16.

Throughout the relevant period (2009 through 2021), US News has required schools to submit the data used in its rankings from all of the school's education doctoral programs. SAC ¶ 60. The methodology does not distinguish between data from in-person and online programs. *Id.* ¶ 57. However, an internal investigation conducted by USC's outside counsel, Jones Day, determined that USC had submitted student selectivity data *only* for USC Rossier's highly selective, in-person PhD program – but *not* from its less-competitive EdD program. *Id.* ¶ 59. The less-competitive EdD program was offered online after 2015 in collaboration with 2U, a company that offers technology platforms for online programs and provides advertising and recruiting for those online programs. *Id.* ¶¶ 2, 6. From the 2009 rankings to the 2010 rankings, USC Rossier's reported acceptance rate dropped forty percentage points (from 50.7% to 10.5%) and its ranking rose 16 places (from #38 to #22). *Id.* ¶¶ 50, 58-61.

USC also suppressed its enrollment figures by excluding online EdD students and falsely designating other EdD students as part-time to manipulate its faculty-student ratios. *See* Motion at 5; Motion, Exs. 21 & 29, Docket Nos. 181-21 & 181-29. Additionally, USC overstated its research expenditures by reporting grants outside of USC Rossier's accounts. Motion at 6; Motion, Exs. 33 & 35, Docket Nos. 181-33 & 181-35.

US News began publishing a specialty ranking of online master's degrees in education in 2013. SAC ¶ 69. USC Rossier's online Master of Arts in Teaching program ranked #44 that year. *Id.* USC did not participate in those rankings in at least 2014 and 2016, nor did the program appear on the publicly available list in 2015, 2017, 2018-2020, or 2021. *Id.*

Plaintiffs allege that USC, knowing the importance of the rankings on prospective students'

school choice, heavily marketed USC Rossier's rapidly rising ranking to the public to boost enrollment in the online programs. *Id.* ¶¶ 76, 78. USC orchestrated this scheme, Plaintiffs allege, through its submission of false/incomplete data and then promoted the resulting ranking knowing that it was misleading. *Id.* ¶ 77. According to Plaintiffs, USC regularly touted USC Rossier's ranking (and that USC Rossier was "top-ranked") in press releases, on social media, on the Rossier Website, and in other promotional materials. *Id.* ¶¶ 83-88. In these advertisements, USC did not disclose that USC Rossier was ranked lower or not ranked at all in US News' online master's degrees in education rankings, or that the data submitted to US News was incomplete or inaccurate. *Id.* ¶¶ 88-90. The named Plaintiffs saw and relied on Defendants' advertisements in different locations over different periods of time. *Id.* ¶¶ 127, 139, 149, 157.

Class discovery closed on August 27, 2024. The Court has previously ruled that USC's use of the phrase "top-ranked" is nonactionable puffery, *see* Docket No. 101 at 11, and denied *Daubert* motions brought by USC to exclude Plaintiffs' experts, *see* Docket No. 173. Plaintiffs now seek to certify the following Class and Subclasses:

> Class: All persons who: (1) were enrolled in the online MAT (single subject ("SS") or multiple subject ("MS")) or the online Ed.D in Organizational Change and Leadership (OCL) at Rossier; (2) began classes in a program cohort between August 2017 and January 2022; and (3) paid or were obligated to pay tuition for classes associated with the program in which they enrolled.
>
> Online MAT Damages Subclass: All Class Members who were enrolled in the online MAT (SS or MS) at Rossier.
>
> Online OCL Damages Subclass: All Class Members who were enrolled in the online Ed.D in OCL at Rossier.

Motion at 1-2.

## II. Legal Standard

"A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018). The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012).

Federal Rule of Civil Procedure 23 requires the party seeking certification to satisfy all four requirements of Fed. R. Civ. P. 23(a) and at least one of the subparagraphs of Fed. R. Civ. P.

23(b). Fed. R. Civ. P. 23(b). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Before certifying a class, the district court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23, which may require some overlap with the merits of the case. *Id*. at 350-51. The court must consider any material necessary to its determination, but "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). "To hold otherwise would turn class certification into a mini-trial." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011); *see also Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024) ("It is critical to keep in mind that class certification is different from summary judgment.").

### III. Discussion

Plaintiffs seek certification under Rule 23(b)(3). *See* Motion at 15. As such, the Court will analyze whether Plaintiffs have satisfied all four requirements of Fed. R. Civ. P. 23(a) and then those of Fed. R. Civ. P. 23(b)(3).

#### A. Rule 23(a)

##### 1. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires a demonstration that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members." *Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 362 (N.D. Cal. 2024). Here, USC does not contest that the numerosity requirement is satisfied. Additionally, Plaintiffs have demonstrated by providing interrogatory responses from USC that the over 2,000 students enrolled in USC's MAT and EdD programs during the relevant class period. *See* Motion, Ex. 92, Docket No. 181-92, Interrogatory No. 10, at 14-16; Motion, Ex. 93, Docket No. 181-93, Supplemental Interrogatory No. 10, at 2-5. The joinder of more than two thousand individual plaintiffs would undoubtedly be impracticable.

The Court therefore finds that the proposed classes satisfy the numerosity requirement of

Fed. R. Civ. P. 23(a)(1).

    2. <u>Rule 23(a)(2): Commonality</u>

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Rule 23(a)(2) has been construed permissively" and its requirements "are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores*, 564. U.S. 38. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores*, 564 U.S. at 359 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). But "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. To satisfy Rule 23(a)(2), "even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359 (quotations and brackets omitted). The class claims, however, "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 350.

Plaintiffs argue that commonality is easily satisfied because numerous common questions of fact and law exist that would all be resolved using common proof: (1) whether and to what extent USC provided falsified data to US News; (2) whether the falsified data inflated USC Rossier's ranking; (3) whether USC Rossier's US News ranking was material to students; (4) whether 2U was contractually incentivized to market the inflated rankings to increase enrollment; and (5) whether students were misled by the US News ranking using an objective reasonable consumer standard. Motion at 16. USC does not directly challenge the commonality requirement, though it sets forth a host of arguments in the related predominance inquiry of Rule 23(b)(3), which will be discussed *infra*.

In any event, under their UCL, FAL, and CLRA claims, Plaintiffs need only demonstrate "that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (quotations omitted). "Thus, claims of this type are ideal for class certification because they do not require 'the court to investigate class members' individual interaction with the product.'" *Guzman v. Polaris Indus., Inc.*, 345 F.R.D. 174, 184 (C.D. Cal. 2023) (quoting *Bradach v. Pharmavite, LLC*, 735 Fed. App'x. 251, 255 (9th Cir. 2018)). Here, under the proposed class definitions, all putative class members will have enrolled at USC Rossier between 2017 and 2022, which is the relevant time period of the alleged rankings fraud, and paid or were obligated to pay

tuition. As such, all of the common questions that Plaintiffs identify would apply to the class and could be resolved through common proof.

The Court would therefore find that the proposed classes satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2).

   3. Rule 23(a)(3): Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quotations and citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotations and citation omitted); *see also Falcon*, 457 U.S. at 156 (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members"). The representative plaintiff's claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members . . . ." *Hanlon*, 150 F.3d at 1020.

However, "a named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508 (quotations omitted). Such a danger might arise if the named plaintiff has a "unique background and factual situation" relative to members of the proposed class that would implicate defenses specific to them and that are likely to become "a major focus of the litigation." *Id*. at 508-509.

Plaintiffs contend that typicality is met because Plaintiffs, along with the proposed class, were subject to the same fraudulent marketing scheme that inflated USC Rossier's ranking and subsequently enrolled in USC Rossier degree programs. *See* Motion at 18-19. USC argues that that typicality has not been met because there are defenses unique to the representative Plaintiffs, including educational malpractice doctrine, a factual defense concerning the timing of when certain named Plaintiffs enrolled predicated on USC's argument that only post-2020 representations are actionable, and specific damages defenses for Plaintiffs potentially seeking

loan forgiveness.  *See* Opp. at 23-25.  Plaintiffs respond that USC's legal defense is inapplicable and that its other defenses, if applicable, would apply to "large swaths of the Class," and, furthermore, affirmative defenses only rarely defeat certification.  *See* Reply at 16-17.

The Court is unpersuaded by USC's argument that Plaintiffs are "really pursuing barred quality-of-education claims masquerading as something else" and that this defeats typicality.  *See* Opp. at 24.  USC acknowledges that, at the motion to dismiss stage, this Court already found that "the crux of Plaintiffs' claim is not . . . the quality of education they received" but rather "that USC intentionally misreported student selectivity data to artificially inflate its US News rankings," which "centers on the rankings as such, not as a proxy for the quality of education actually provided."  *See* Docket No. 63 at 12; Opp. at 23.  Nevertheless, USC contends that "the named Plaintiffs' pleading was not representative of their actual complaints," which are artfully plead educational malpractice claims.  Opp. at 23-24.  USC's basis for this contention is that depositions taken of Plaintiffs "revealed the true nature" of their claims.  *Id*. at 24.  USC cites to portions of Plaintiffs' deposition testimony in which they refer to "[q]uality of education complaints" at USC Rossier.  *See* Opp., Ex. 18, Docket No. 183-18, 137:10-138:16 (Zarnowski); *see also* Opp., Ex. 16, Docket No. 183-16, 215:23-216:1 (Murtada); Opp., Ex. 14, Docket No. 183-14, 126:6-11 (Cummings).  However, much of this testimony was elicited by direct questioning about Plaintiffs' opinions of the education they received.  *Id*.  The Court does not find that these comments necessarily subvert its earlier findings regarding the nature of Plaintiffs' claims.  *See* Reply at 17.

Moreover, the Court is not persuaded that USC's invocation of this defense is truly unique to the Plaintiffs.  USC suggests that other "aggrieved students" would not be subject to such a defense because the named Plaintiffs "confirmed they are really pursuing barred quality-of-education claims."  *See* Opp. at 24.  However, given the inherent factual overlap between cases concerning educational quality and those arising out of rankings misrepresentations, it seems likely that USC would mount a similar defense against other class members raising the same claim.[3]

The Court further agrees with Plaintiffs that USC's factual defense that only students who relied on the 2020 or later edition of US News rankings have actionable claims would apply not only to Zarnowski, Murtada, and Cummings, but broadly to class members depending on when

---

[3] USC argues that, unlike Plaintiffs, "many putative class members have no complaints, but only praises, regarding Rossier's quality of education."  *See* Opp. at 24.  But the evidence submitted in support of this contention is a survey that merely asked students about their "main reasons" for selecting USC Rossier, "USC Rossier's biggest strength," and did not invite any criticism or constructive feedback.  *See* Opp., Ex. 23, Docket No. 183-23.

7

they enrolled and therefore does not make the named Plaintiffs atypical. *See In re Honda Idle Stop Litig.*, 347 F.R.D. 528, 542 (C.D. Cal. 2024) (statute of limitations defense was not unique to class representatives because class members themselves had differing times of discovery); *see also Williams v. Apple, Inc.*, 338 F.R.D. 629, 647 (N.D. Cal. 2021) (waiver defense was not unique to class representatives when other class members could have read the disclosure at issue). The Court also finds that it would be premature to deny class certification because some Plaintiffs "may seek loan forgiveness," *see* Opp. at 24, and there is no indication that Zarnowski and Favell are the only class members who may do so. In short, none of these defenses are so specific to Plaintiffs as to constitute a "unique background and factual situation" that might imperil typicality. *Hanon*, 976 F.2d at 508.

The Court finds that typicality is met because Plaintiffs claim that they have been injured by the same alleged "course of conduct" and "scheme" as the rest of the proposed class. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017); *see also Makaeff v. Trump Univ., LLC*, No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164, at *9 (S.D. Cal. Feb. 21, 2014) (finding typicality where nature of claim, "allegedly fraudulent scheme to misrepresent the value and benefits of [Trump University's] programs and services," was based on conduct not unique to named plaintiffs). Because the defenses USC raised do not endanger typicality, the Court thus finds that Plaintiffs' claims are sufficiently typical of the class's claims to preliminarily satisfy Rule 23(a)(3).

4. Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Generally, whether or not the class representative satisfies Rule 23's adequacy requirement "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (quotations omitted) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)); *see also Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [the class

8

representative] understands his duties and is currently willing and able to perform them. The Rule does not require more.").

Here, Plaintiffs assert in the Motion that there is no conflict of interest, no antagonism, and no collusion present. Motion at 19. Furthermore, Plaintiffs state that they share the same interest with absent class members in proving that: (1) USC provided false data to U.S. News that inflated its ranking; (2) USC's deceptive and misleading advertisements of its fraudulent ranks; and (3) that class members were induced by these advertisements to enroll and overpay for tuition. *Id*. USC, for its part, does not challenge Plaintiffs' positions with respect to the adequacy requirement.

The Court agrees with Plaintiffs that their interest in this litigation is aligned with that of the absent class members. In addition, the Court is fully satisfied with their participation in this litigation, as each has sat for a deposition and participated in discovery. Indeed, aspects of the Plaintiffs' interaction with USC Rossier was heavily relied upon in both parties' briefing in this matter. The Court also finds that there is no obvious conflict of interest or sign of collusion that would question Plaintiffs' attestation that none exist.

With respect to Plaintiffs' counsel, the Court is more than satisfied that Tycko & Zavareei LLP and the National Student Legal Defense Network would serve as adequate Class Counsel. The Court is intimately aware of the extensive work that has been performed so far in this action and will take the opportunity to observe that the lawyers on *both* sides of this case have proven themselves thorough, professional, and to be vigorously litigating this case. The Court has also reviewed the declarations submitted at Docket Nos. 181-94 and 181-95 and finds that all of the factors in Fed. R. Civ. P. 23(g)(1)(A) weigh in favor of appointing Tycko & Zavareei LLP and the National Student Legal Defense Network as Class Counsel.

The Court would therefore find that Plaintiffs and Class Counsel satisfy the adequacy requirement of Fed. R. Civ. P. 23(a)(2).

For all of the foregoing reasons, the Court finds that the requirements delineated in Rule 23(a) are satisfied. The Court would therefore **APPOINT** Tycko & Zavareei LLP and the National Student Legal Defense Network as Class Counsel and continue to analyze the propriety of class certification under Rule 23(b)(3).

**B. Rule 23(b)(3)**

Because Plaintiffs seek to certify a class under Rule 23(b)(3), the Court must analyze whether the proposed class satisfies the predominance and superiority inquiries. *See* Fed. R. Civ. P. 23(b). Rule 23(b)(3) provides:

> (b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if: . . .
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

1. Predominance

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "For purposes of this analysis, an individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id*. (quotations and brackets omitted) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Plaintiffs argue that common issues of falsity, materiality, and reliance predominate. *See* Motion at 21. USC challenges predominance on several grounds. First, USC asserts that materiality is a predominating individual issue because evidence shows that only about a third of USC Rossier students considered ranking to be an important factor in enrollment and Plaintiffs have not shown a common understanding of what a rank means among class members. *See* Opp. at 26-29. USC further contends that proposed class members' disparate exposure to the alleged

misrepresentations and injury are predominating individual issues. *Id*. at 29-35.

### a. Materiality

Plaintiffs contend that an objective reasonable consumer standard applies to their claims, and as such, they need not show an individualized understanding of specific representations. *See* Motion at 21-22. Furthermore, Plaintiffs argue, "if a named plaintiff shows that they personally relied on and was injured by a misrepresentation that was material and, thus likely to deceive class members, that is sufficient to support a class claim for injunctive relief and restitution under the UCL/FAL, as well as to give rise to a classwide presumption of reliance under the CLRA." *Id*. at 23. USC argues that Plaintiffs must show that the alleged misrepresentation is material to all class members or else reliance is too variable, and they cannot do so given the "numerous factors other than rank" that go into enrollment decisions. *See* Opp. at 26-27. The parties dispute the meaning and significance of certain survey evidence. *Id*. at 27-28; Reply at 5-6. USC also points to different subjective understandings among Plaintiffs of what the US News ranking meant and was based upon, arguing that these raise individualized inquiries. *See* Opp. at 28-29.

Plaintiffs' UCL, FAL, and CLRA claims can be considered together. *See In re ConAgra Foods, Inc*., 90 F. Supp. 3d 919, 982 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc*., 674 F. App'x 654 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121 (9th Cir. 2017). "Each statute allows plaintiffs to establish materiality and reliance (*i.e.*, causation and injury) by showing that a reasonable person would have considered the defendant's representation material." *Id*. at 983. Plaintiffs "need not show individualized reliance if [they] can establish the materiality" of USC's representations "to a reasonable consumer." *Id*. "And because materiality is the central element of a claim under the CLRA, when it can be resolved with common proof, it predominates over any remaining issues, even those that must be resolved on an individual basis." *Clevenger v. Welch Foods Inc*., 342 F.R.D. 446, 459 (C.D. Cal. 2022) (quotations and brackets omitted).

Plaintiffs need not demonstrate that the alleged misrepresentations were "the only cause" of their injuries or even "the predominant or decisive factor" in their decision to enroll. *Tobacco II*, 46 Cal. 4th at 326; *see also Lytle*, 114 F.4th at 1036 (9th Cir. 2024) ("To establish reliance under the CLRA, a misrepresentation need not be the sole or even the decisive cause of the injury-producing conduct.") (quotations omitted). The Court finds it sufficient at this stage that Plaintiffs have plausibly demonstrated that USC's US News ranking was not "so obviously unimportant that

the jury could not reasonably find that a reasonable [prospective student] would have been influenced by it." *Tobacco II*, 46 Cal. 4th at 328 (quotations omitted); *see* Motion at 23-24.

USC takes issue with Plaintiffs' survey evidence. *See* Opp. at 27-28. But Plaintiffs need not even "produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation," and "a lack of such evidence does not prevent class certification – even when defendants offer their own extrinsic proof suggesting that the misrepresentation is not material." *Clevenger*, 342 F.R.D. at 459 (quotations omitted); *see also DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024) ("[P]roof of materiality is not a prerequisite to class certification.") (quotations omitted). In any case, USC erroneously equivocates materiality with students' self-reported "most important factor" in selecting a school, when materiality merely requires that a representation have an influence, not necessarily that it be the driving one. *See* Reply at 4. The Court further rejects USC's extrapolation that "70% of students . . . do not consider ranking to be *an* important factor," *see* Opp. at 27 (emphasis added), from the fact that those students apparently did not name reputation or prestige as the *most* important factor in their enrollment decision. *See* Docket No. 177-45; Reply at 5.

Finally, regardless of what Plaintiffs individually associated with the rankings, US News rankings have "a clearly ascertainable meaning" derived from specific data US News collects and assigns weighted percentages. *Astiana v. Kashi Co.*, 291 F.R.D. 493, 504 (S.D. Cal. 2013); *see* SAC ¶ 56. USC Rossier's allegedly falsified admittance data, used to calculate an inaccurate selectivity score in a set formula and thereby generate a higher US News ranking, "is a sufficiently definite representation whose accuracy has been legitimately called into question."[4] *Astiana*, 291 F.R.D. at 505. The concrete and calculable meaning of a US News ranking is distinguishable from nebulous or inherently subjective representations for which courts have found that an absence of a demonstrated common understanding among class members defeated predominance. *See Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993) ("Whether other class members believed [a] juice was 'fresh' would be a matter of individual proof."); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1017, 1045 (C.D. Cal. 2018) (plaintiffs failed to establish common understanding of the phrase "Hydrates like a sports drink"); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. 13-ml-2438-PSG-(PLAx), 2017 WL 2559615, at *8 (C.D. Cal. June 7,

---

[4] So too are faculty-student ratios tainted by misrepresented student enrollment numbers and falsified research expenditure amounts.

2017) ("Where plaintiffs fail to establish a controlling definition for a key term in an alleged misstatement, courts have found that materiality is not susceptible to common proof.") (finding a "lack of a common definition for the term 'energy'" in "five hour energy" and "hours of energy").

The Court thus finds that common issue of the objective materiality of the US News rankings on USC Rossier enrollment predominates over individual issues.

      b. *Exposure*

USC's next argument that the Motion should be denied on predominance grounds is that class members' exposure to the disputed representations is an individual issue, predicated partly on its contention that only post-2020 representations are potentially actionable. *See* Opp. at 29-30. USC also notes that there is "expert dispute" concerning the extent to which marketing materials reached class members and argues that the Court must resolve such a dispute at class certification. *Id*. at 30-31. Plaintiffs cast these arguments as an effort to relitigate the Court's previous admission of Plaintiffs' expert, Dr. John Chandler, aver that the Court need only determine the capability of class-wide resolution which is satisfied by the previous approval of Dr. Chandler's report, and argue that the expert dispute should ultimately be resolved by the factfinder. *See* Reply at 9-10.

As a threshold matter, USC overstates the Ninth Circuit's instruction as to what the district court must do when presented with an expert dispute at class certification. "The determination whether expert evidence is capable of resolving a class-wide question in one stroke may include weighing conflicting expert testimony and resolving expert disputes where necessary to ensure that Rule 23(b)(3)'s requirements are met and the common, aggregation-enabling issue predominates over individual issues." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (quotations, brackets, and citations omitted). But a "district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Id*. at 667 (emphasis in original); *see also Lytle*, 114 F.4th at 1024 ("[C]lass action plaintiffs are not required to actually prove their case through common proof at the class certification stage," but rather "must show that they will be able to prove their case through common proof *at trial*.").

"[I]n UCL cases, . . . exposure is relevant to predominance, but only to establish reliance." *Walker v. Life Ins. Co. of the Sw*., 953 F.3d 624, 632 (9th Cir. 2020). Even where there is expert dispute concerning exposure, predominance is met where plaintiffs have, through "disputed but

admissible expert opinions," established "the pervasiveness of [defendant]'s successful marketing strategy . . . to support a presumption of reliance for absent class members." *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 993 (N.D. Cal. 2022).

Plaintiffs have sufficiently demonstrated that they can show that the proposed class was exposed to the representations at issue through USC's marketing scheme. The Court has already fulsomely reviewed the reliability of Dr. Chandler's opinions and considered many of USC's same objections, concluding that "[a]t the early juncture of class certification . . . Dr. Chandler's ultimate opinion – *i.e.*, that it would have been virtually impossible for a student to enroll without exposure to a fraudulent ranking – [is] supported by his expertise, comprehensive examination of general marketing strategies, and a review of record evidence in this case indicating that 2U and USC centrally controlled an extensive marketing strategy."[5] *See* Docket No. 173 at 9. While admittedly some "expert evidence, while otherwise admissible under *Daubert*, [is] inadequate to satisfy the prerequisites of Rule 23," the glaring issues identified by the Ninth Circuit that could give rise to such a result are not present here. *Olean*, 31 F.4th at 666 n.9 (collecting cases). Therefore, the Court finds that Dr. Chandler's opinions may establish exposure sufficient to render Plaintiffs' claims capable of class-wide resolution at this stage. As such, it would be unnecessary and thus improper for the Court to resolve the expert dispute on this Motion.

    c. *Injury*

Plaintiffs propose to establish price premium damages calculable on a class-wide basis through a conjoint survey to be conducted by their expert, Dr. Michael Dennis. *See* Motion at 24-25. However, USC argues that entitlement to damages is an individual inquiry because price premium damages require plaintiffs to prove an efficient market, in other words, that the price of a USC Rossier degree is responsive to publicly available information about its value. *See* Opp. at 32-33. USC contends that there is no evidence that its tuition would have changed had USC Rossier been accurately ranked. *Id*. at 33. Plaintiffs argue that these arguments were rejected in the Court's *Daubert* ruling and argue that they need not prove an efficient market because they do not submit a "fraud on the market" damages theory. *See* Reply at 13-16. Plaintiffs point to another case in this District in which Chief Judge Dolly Gee approved the plaintiffs' use of a conjoint

---

[5] Notably, USC raised the same objections to Dr. Chandler's opinions in its opposition brief as it did in its *Daubert* motion, disputing the quantitative underpinning of his conclusions based upon his lack of establishing an open rate of emails and site traffic and "other channels" data. *See* Opp. at 31; Docket No. 144 at 4-6.

survey to establish damages in a higher education dispute. *Id.* at 14 (referencing *In re Univ. of S. Cal. Tuition & Fees COVID-19 Refund Litig.*, 695 F. Supp. 3d 1128 (C.D. Cal. 2023)).

First, the Court addresses USC's contention that "Plaintiffs must offer evidence of an efficient market." *See* Opp. at 35. The Court finds that the two cases upon which USC relies – *Harnish v. Widener University School of Law*, 833 F.3d 298 (3d Cir. 2016) and *In re POM Wonderful LLC*, No. 10-ml-02199-DDP-(RZx), 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) – do not support that assertion. In *Harnish*, plaintiffs alleged "inflated tuition" as their proposed theory of damages. 833 F.3d at 307. "[I]n the abstract," the Third Circuit "perceive[d] no conceptual problem with the plaintiffs' proposed theory." *Id*. The problem was that the "plaintiffs' chosen inflated-tuition theory . . . ha[d] been rejected by the New Jersey and Delaware courts outside the federal securities fraud context." *Id*. at 309. The plaintiffs themselves "placed market efficiency at issue by citing [expert] analysis suggesting that tuition at Widener and elsewhere responds to public information, including employment statistics." *Id*. at 311. The Third Circuit found that, despite "some plausibility" to this theory, it had been rejected in the context of consumer fraud. *Id*. at 311-13. *Harnish* explicitly proscribes the efficient market evidence USC contends is required in this context. *Harnish* does provide that plaintiffs must "do more than propose [inflated tuition] as an economically plausible theory" and "need to provide proof that price inflation actually occurred on this occasion, as a result of the specific misrepresentation at issue." *Id*. at 313 n.10. But *Harnish* does not rule out doing so through a conjoint survey, as Plaintiffs propose.[6]

In *POM*, the plaintiffs' damages theory was "(1) that a presumption of reliance . . . establish[ed] the existence of a fraud on the entire juice market, (2) that because of that fraud on the market, every consumer who purchased Defendant's juices was similarly damaged . . . and (3) damages can therefore be measured on a classwide basis." *POM*, 2014 WL 1225184 at *4. As in *Harnish*, the *POM* court was skeptical that such a theory could be applied to a consumer action, but assuming it did, plaintiffs had to "show that the relevant market [was] efficient." *Id*. Here, however, Plaintiffs propose to "isolate a price premium associated with a specific misrepresentation" by conducting a conjoint survey and "are not advancing a fraud on the market theory, nor does their damages model depend on one." *See* Reply at 15. The Court is unpersuaded

---

[6] The proposal for which Third Circuit expressed "serious doubts" involved a regression equation that assessed how the average tuition costs of 64 schools corresponded with reported employment statistics, which ignored the possibility that "Widener could be an outlier." *Harnish*, 833 F.3d at 313 n.10.

15

by USC's assertion that efficient market evidence is a "necessary precondition" to *any* price premium theory of damages and does not read *Harnish* or *POM* to say so. Opp. at 17.

Specifically, USC claims that Plaintiffs must prove that "tuition is responsive to rank," and submit a contrary expert analysis to demonstrate that it is not. *See* Opp. at 17. USC raised similar arguments in its motion to exclude Dr. Dennis. *See* Docket No. 146 at 6-9. While USC may ultimately persuade a factfinder that "tuition is essentially unmoored from ordinary market forces," that does not preclude plaintiffs from presenting a conjoint survey to the factfinder in a higher education dispute that rejects that hypothesis. *In re Univ. of S. California Tuition & Fees Covid-19 Refund Litig.* ("*In re USC*"), 695 F. Supp. 3d 1128, 1149 (C.D. Cal. 2023); *see also In re Pepperdine Univ. Tuition & Fees Covid-19 Refund Litig.*, No. 20-cv-4928-DMG-(KSx), 2023 WL 6373845 (C.D. Cal. Sept. 26, 2023). Nor does USC's contrary evidence render Plaintiffs' damages theory incapable of demonstrating class-wide damages.[7] *In re USC*, 695 F. Supp. 3d at 1159-60.

USC seeks to avoid *In re USC* by distinguishing the damages theory in that case, the disparity in value between an in-person and online education, from Plaintiffs' price premium theory here. Opp. at 34. The value-decline theory, USC contends, "did not depend on an efficient market." *Id*. The Court observes that USC took a contrary position when opposing class certification in *In re USC*. *See In re USC*, No. 2:20-cv-4066-DMG-(PVC), Docket No. 146, at 17 (arguing damages model was "not a fit for this case because higher education is not an efficient market"). Regardless, because the Court finds that Plaintiffs' damages theory does not require efficient market evidence for class certification, *In re USC* is not distinguishable on that basis.[8]

The Court would therefore find that the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.

2. Superiority

USC does not challenge Plaintiff's assertion that the superiority requirement is satisfied. As Plaintiffs state in their Motion, there is no evidence before the Court indicating that any other

---

[7] The Court disputes USC's assertion that *In re USC*'s ruling was that "the expert's opinions were admissible, and, therefore, the plaintiffs proposed a 'plausible' theory." *See* Opp. at 34-35. Rather, *In re USC* found that the plaintiffs' proposed damages model was "a plausible method for showing the availability of restitution on a class-wide basis," USC's contrary evidence did not "significantly undermine[] it for purposes of class certification," and USC's objections to the damages model were for resolution by the factfinder. *In re USC*, 695 F. Supp. 3d at 1159-60.

[8] The Court has already indicated that it finds *In re USC* relevant and persuasive by adopting its reasoning in its *Daubert* ruling. *See* Docket No. 173 at 18.

lawsuit is pending against USC regarding its alleged misrepresentation of USC Rossier's rankings and because USC is located (very close) to this District Court, concentrating the litigation here would be desirable. There are no obvious reasons before the Court at this juncture that would indicate difficulty with managing this class action. As indicated earlier, there are at least some meaningful questions with calculating class-wide damages which renders it difficult to precisely state the gulf between litigation costs and potential recovery. However, no genuine argument could be made that class members might have interests in individually controlling the action because the damages amount would certainly dwarf recovery given the necessity for expert witnesses in this case. For all of these reasons, the Court has considered the various factors delineated in Fed. R. Civ. P. 23(b)(3) and finds that they all obviate towards a finding that a class action would be superior in this matter.

The Court would therefore find that the superiority requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.

Having found the requirements of predominance and superiority satisfied, the Court finds that Plaintiffs have met their burden to preliminarily certify the proposed class under Rule 23(b)(3).

## IV. Conclusion

Having considered the foregoing, because all requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court concludes that preliminary certification of the proposed class is appropriate here. Accordingly, the Court **PRELIMINARY CERTIFIES** the proposed class, **APPOINTS** Iola Favell, Sue Zarnowski, Mariah Cummings, and Ahmad Murtada as Class Representatives, and **APPOINTS** Tycko & Zavareei LLP and National Student Legal Defense Network as Class Counsel.